Eager, J.
This action, which has been tried by the court without a jury, involves the legal rights and relations of the stockholders of Believe It or Not, Inc. The said corporation is engaged principally in the exploitation and use of the trade names and trade-marks “ Believe It or Not, Ripley “ Believe It or Not ” and “ Ripley ”. It has a license from the executors of the estate of the late Robert L. Ripley to use and exploit the said names and marks.
The parties to this action are the present owners of all the 100 shares of the issued and outstanding stock of the corporation. The plaintiff is the president and general manager and a director of the corporation and owns 31% shares of its stock. The defendant Ripley, who is a brother of the said late Robert L. Ripley, is vice-president and a director of the corporation and owns 48% shares of its stock. The defendant Herlart, Inc., owns the remaining 20 shares of stock of Believe It or Not, Inc.
Robert L. Ripley, who died in May, 1949, was the originator of the cartoons generally displayed with the phrase “ Believe It or Not ”. The plaintiff, Douglas F. Storer, had worked for and been associated with Ripley and the corporation for many years in finding and developing material and in selling radio and motion picture outlets for “ Believe It or Not ” features and material.
In January, 1951, the estate of Robert L. Ripley owned 60 shares of the stock of the corporation, his brother, the defendant Ripley, owned 20 shares and Robert J. Hyland owned the remaining 20 shares. In or prior to January, 1951, the estate of Robert L. Ripley entered into an agreement to sell its 60 shares of stock for $50,000 to John Arthur Exhibitions, Inc. (a corporation sublicensed to exploit certain trade-marked material of Believe It or Not, Inc.). Upon plaintiff’s learning of this fact, he contacted the defendant Ripley and they obtained an order of the Surrogate’s Court staying the sale and directing that the stock be offered at competitive bid. The plaintiff and the defendant Ripley then were successful bidders for the stock on their offer of $72,000 for it. This purchase price was principally financed in the first instance by the help of one Donald Millar, who arranged for the discount in the New Rochelle Trust Company of a note indorsed by him for the plaintiff and the defendant Ripley.
The 60 shares of stock acquired from the Ripley estate were later apportioned between the parties so that 31% shares thereof became owned by plaintiff individually, and 28% shares thereof were transferred to the defendant Ripley, increasing his total holdings in the company to 48% shares. In July, 1951, the 20 *239 shares formerly owned by Hyland were sold and transferred to defendant Herlart, Ine.
Upon the acquiring by plaintiff and the defendant Ripley of the stock from the Ripley estate, a stockholders’ meeting was held, and the plaintiff, the defendant Ripley and one Colwell were elected directors of the company. Colwell was the nominee of Millar, who had helped finance the purchase by plaintiff and the defendant Ripley of the estate stock. The said Millar, for his aid in financing such purchase, is concededly entitled to 3 shares of stock from the plaintiff and 3 shares of stock from the defendant Ripley. He is, in effect, the equitable owner of 6 shares of stock of the corporation, reducing the stock ownership of plaintiff and the defendant Ripley by 3 shares each.
In the election of the three directors (the plaintiff, the defendant Ripley and Colwell), the defendant Ripley voted his stock with that of plaintiff. Since the taking of office of these three directors, the plaintiff, as general manager and president of the corporation, has generally controlled the affairs of the corporation.
The defendant Ripley has now, however, allied himself with the defendant Herlart, Inc., and these defendants, owning a majority of the stock, on March 25,1952, served a notice requesting a call of a stockholders ’ meeting for the purpose of removing Storer and Colwell as directors. The alliance of Ripley with Herlart, Inc., concededly looks toward the election of a new director in place of Colwell and the termination of the plaintiff’s control in the affairs of the corporation. The plaintiff, by this action, makes claim that the defendant Ripley is bound by agreement to continue to vote for the plaintiff and Colwell as directors and also makes claim that the defendants have unlawfully conspired together to injure the plaintiff with respect to his rights as a stockholder and under his agreements with Ripley.
It is clear that the equities in the case are with the plaintiff. It was the plaintiff who planned the purchase of the large block of stock from the Ripley estate. It was by his efforts that the estate received $22,000 more than the price on a proposed sale to John Arthur Exhibitions, Inc., and the defendant Ripley indirectly benefited by this increased price inasmuch as he is a substantial beneficiary in the estate of Robert Ripley. It was through the efforts of plaintiff and the efforts of Millar that the purchase of the stock was financed and it should be noted that it was financed in a manner whereby all but 6 of the 60 shares were to be acquired by plaintiff and the defendant Ripley whereas it was earlier thought necessary by the plaintiff and Ripley that 29 *240 shares be sold to a third person in connection with the financing.
As a result of the acquiring of the stock, the defendant Ripley was elected and is acting as vice-president of the company at $6,500 a year. There is no question but what Ripley was treated fairly in the first instance, and his only complaint now is that he has no voice in the company affairs and that it is being willfully mismanaged by the plaintiff for the purposes of the latter. With this, the court does not agree.
So far as the defendant Herlart, Inc., is concerned, such defendant acquired its stockholdings in the company in July, 1951. It bought but a minority stockholding interest, realizing, of course, that it would have only the rights of a minority stockholder. However, shortly after acquiring its stock, it demanded a financial statement of Believe It or Not, Inc., and sometime later it brought an action against the corporation, the plaintiff and Colwell as directors, and Morton Miller, as secretary, for waste. The defendant Ripley, who was also a director and vice-president of the corporation, was not made a defendant in such action. The defendants Ripley and Herlart, Inc., have been allied in the defense of the action at bar, and their attorneys concede that they seek to wrest control of the affairs of the corporation from plaintiff.
The plaintiff has long been actively connected with the corporation. He is vitally interested in the continuance and success of the corporation, not only because of his investment, but principally because he has long-term agency contracts with the corporation from which he receives a substantial income. These contracts were negotiated and entered into before he became a stockholder and officer of the corporation.
Notwithstanding the equities are with the plaintiff, it is clear that the plaintiff may not succeed in this action unless he has established an agreement binding the defendant Ripley to vote his stock for plaintiff and Colwell as directors. In the absence of such an agreement, the defendants, owning the majority of the stock, would have the right to combine together to vote for directors and to control the affairs of the corporation, and, absent such agreement, their acts and conduct, as established herein, would not, in the opinion of the court, amount to an actionable conspiracy as against the plaintiff’s rights.
From the time that the plaintiff and the defendant Ripley decided to buy the Ripley estate shares, it is clear that they intended to vote their stock as a unit and to form a voting trust agreement to carry out such intent. Also, from the beginning, it was their intent that the plaintiff and the defendant Ripley *241 should be directors of the corporation, that the plaintiff should be president and general manager thereof, and that defendant Ripley should be a vice-president thereof. A voting trust agreement, however, was never prepared, and there is a real dispute as to whether it was agreed that plaintiff and Ripley were to continue as officers and directors for any stated period. While they were in an attorney’s office, at the time they made the final plans for the successful joint bid for the 60 shares which they purchased from the Ripley estate, a short memorandum in writing was made in which they agreed, among other things to the following: That they should “ establish a voting trust in which the stock now owned and to be owned by the undersigned shall vote as a unit ”; that the stock of a party should not be sold unless first offered to the other party and then to the corporation ; that the plaintiff should be president and general manager with certain expenses and commissions paid and that the defendant Ripley should be vice-president with a salary as such; that they ‘ ‘ shall have the right to become directors of the corporation and that they shall have the right to have present at any and all directors’ meetings their attorneys and that it would “ not be possible for important decisions to be taken without a quorum and that the undersigned must be present to form a quorum ’ ’. The agreement between the parties, however, did not prescribe as to the details of the proposed voting trust agreement nor specify any duration of their terms of office as directors and officers of the corporation.
Finally, when Millar was induced to indorse the note for the plaintiff and Ripley to finance the purchase of the 60 shares of stock, the parties and Millar and Colwell met at plaintiff’s home and the plaintiff claims that it was then orally agreed that Col-well, nominated by Millar, should be a director, and that plaintiff and Colwell should continue as directors as long as the plaintiff or Millar owned stock in the corporation. The plaintiff, Millar and Colwell gave testimony in support of such an agreement. Reasonable inferences from all the evidence give support to the finding of such an agreement. The court was impressed with the testimony of plaintiff, Colwell and Millar and with their appearance and demeanor upon the stand. The court believes and finds that it was the understanding and agreement between plaintiff and Ripley that the plaintiff and Colwell should continue as directors as long as the plaintiff or Millar owned stock in the corporation. The court rejects the testimony of Ripley and his wife that there was no such agreement.
*242 Notwithstanding the agreement found was by parol, it was valid and enforcible. (See Wygod v. Makewell Hats, 265 App. Div. 286, and Kronenberg v. Sullivan Co. Steam Laundry Co., 91 N. Y. S. 2d 144, affd. 277 App. Div. 916.) Such an agreement is valid notwithstanding all of the stockholders are not parties thereto. (Lockley v. Robie, 301 N. Y. 371.) It is enforcible notwithstanding the provisions of the agreement between the parties for a voting trust are so indefinite as to be unenforcible. (See Wygod v. Makewell Hats, supra.)
The court holds that the evidence of such parol agreement is not barred by the written memorandum of agreement by the plaintiff and Ripley with Millar dated March 15, 1952, nor by the merger clause therein. Evidence of such parol agreement was receivable and the parol agreement survived the execution of the written memorandum because it is clear that such memorandum was not intended to express the agreement between the plaintiff and Ripley. Such memorandum was an agreement by them on the one hand with Millar on the other hand, having principally to do with the note indorsed by Millar and his six shares of stock.
Evidence of this understanding between the parties is consistent with and, of course, not barred by the written agreement between them made on January 30, 1951. Such written agreement was made in advance of the bid of the parties for the stock. The oral agreement of February 11, 1951, was not a “ prior or contemporaneous ” oral agreement within the parol evidence rule but was a subsequent agreement made in view of later events, that is, after the acceptance of the bid for the stock and after the parties had arranged for the financing of the same and had determined upon how the stock was to be owned and held.
The oral agreement as to the personnel of the board of directors of the corporation is also not a variance with the letter of February 8, 1952, addressed to Millar and the New Rochelle Trust Co. and signed by the plaintiff and Ripley. In fact, such letter tends to confirm the fact that there was an agreement between the plaintiff and Ripley to vote their stock for the election of the plaintiff, Ripley and Colwell as directors.
The motion of defendants to strike out the evidence of the oral understanding of February.il, 1951, is denied.
The court finds that the defendant Ripley, with knowledge of his agreement with the plaintiff as to the directorship of the corporation, combined and conspired with Herlart, Inc., to remove the plaintiff and Colwell as directors, but in all other *243 respects the allegations of plaintiff as to a conspiracy are rejected.
The court dismisses the several defenses contained in the answer of the defendant Herlart, Inc., and in the amended answer of the defendant Ripley. None of said defenses has been established by the evidence. With respect to the defense of waste, the defendants did point particularly to the payment of $977.17 monthly to the plaintiff on account of office expenses. The agreement between the parties (see written agreement of January 30, 1951) was that the plaintiff, as president and general manager, should have his office expenses paid. It is to be noted that he was to receive no salary and has been receiving no salary while, on the other hand, it was agreed that the defendant Ripley was to receive and is receiving a salary. The board of directors of the corporation expressly authorized the payment to plaintiff of 75% of his actual office expenses (rather than his total office expenses as originally agreed upon) and it appeared that the figure of $977.17 was agreed upon as a tentative figure representing such 75%. While the court feels that the amount paid to date may be subject to adjustment, there is no sufficient evidence of willful waste or misappropriation by the plaintiff. The defendants also point to the payment of $688.50 to a lawyer in Washington, D. C., for an opinion as to the validity of the title of the Ripley estate to the trade names and trade-marks licensed to the corporation. This was a matter in which the corporation was interested, and there is no evidence that the amount paid was grossly excessive or that the plaintiff individually profited thereby. The defendants finally point to an alleged impairment in capital during plaintiff’s management of the corporation. Without detailing the evidence, the court finds that there was established no fault or dereliction of duty on part of plaintiff resulting in impairment of capital. The defendants’ attorneys also repeatedly refer to the large commissions (25 to 40%) being received by plaintiff individually in connection with the radio, advertising, books, etc., business of the company. It is a fact, however, as heretofore noted, that the contracts entitling plaintiff to such commissions were made some time before he became a stockholder or officer in the company. The contracts were apparently fairly made as a result of arms’ length negotiation and the plaintiff should not be criticized for receiving that to which he is legally entitled.
The defense setting up the by-law provision that directors may be removed at any time by a vote of the holders of 50% of the *244 stock is dismissed upon the ground that such provision is subject to the agreement between plaintiff, Ripley and Millar as found by the court. The defendant Ripley is precluded by his agreement from voting to remove the plaintiff and Colwell as directors and is bound to vote his stock to elect such persons as directors.
The court holds that it is not established that the plaintiff dominates and controls Colwell and, therefore, the board of directors. Colwell is a responsible official of the New Rochelle Trust Company, and impressed the court as a conscientious executive. In fact, defendants’ counsel labels him as a “ very intelligent man, of quite important business connections ”. As director, he is bound, of course, to exercise good faith and due diligence, and it has not been established that he has been derelict in his duties.
Upon the evidence as a whole and upon the equities of the case, the court feels that it should enforce the oral agreement found by it and clearly in accord with the original intentions of the plaintiff and the defendant Ripley. True, this leaves Herlart, Inc., without representation on the board of directors, but it holds merely 20% of the stock, and knowingly bought into the company, well aware of the affairs of the company and that as minority stockholder it would have no right to elect a director.
Judgment is directed, determining and declaring:
(1) That there is a valid agreement existing between the plaintiff and the defendant Ripley whereby, among other things, they have mutually agreed that plaintiff and Colwell shall be and continue to be directors of Believe It or Not, Inc., as long as the plaintiff or Millar own stock in the company, and that such agreement is binding upon the defendant Ripley;
(2) That the defendants be and they hereby are permanently enjoined from breaching or inducing a breach of said agreement;
(3) That the defendant Ripley be directed to vote for the election of the plaintiff and Colwell as directors of Believe It or Not, Inc., in accordance with their agreement;
(4) That the agreements in writing annexed to the complaint are hereby found to have been duly made by the parties, are valid and binding upon the plaintiff and the defendant Ripley;
(5) Declaring that the notice of March 25, 1952, sent by the defendants Douglas Ripley and Herlart, Inc., to Harry E. Col-well, Jr., Douglas F. Storer and Douglas Ripley, directors of Believe It or Not, Inc., is a nullity and in violation of the agreements among plaintiff, defendant Douglas Ripley, New Rochelle Trust Company and Donald Gr. Millar;
*245 (6) That the defendants be and they hereby are permanently enjoined from proceeding with a meeting of the stockholders pursuant to the notice mentioned in the preceding paragraph.
The judgment shall be without costs.
This memorandum may stand as the decision of the court without necessity of formal findings.
Judgment to be settled on notice.