DOUGLAS RIPLEY et al., Respondents, *v.* DOUGLAS F. STORER et al., Appellants, et al., Defendant.

Argued October 17, 1955; decided January 13, 1956.

*Lawrence E. Bobker* and *David M. Engelson* for Douglas F. Storer, appellant. I. The three prior adjudications are final and dispositive of all of the issues in the present action and *res judicata* of respondents' claims herein. (*Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304; *Evergreens* v. *Nunan,* 141 F. 2d 927, 323 U. S. 720; *Johnson* v. *Muelberger,* 340 U. S. 581; *Partmar Corp.* v. *Paramount Corp.,* 347 U. S. 89.) II. Reversible error was committed by the trial court when it refused to admit into evidence the testimony and exhibits in the former adjudications of Justice EAGER and Justice STEUER. (*Barber* v. *Ellingwood,* 137 App. Div. 704; *Peoples Gas & Elec. Co.* v. *City of Oswego,* 207 App. Div. 134; *Emich Motors* v. *General Motors,* 340 U. S. 558; *Holland* v. *Spear & Co.,* 193 Misc. 524; *New York Central R. R. Co.* v. *Barnet,* 192 App. Div. 784.)

*J. Addison Young, II,* for Harry E. Colwell, Jr., appellant. I. The judgment in the action before Justice EAGER was a bar to the amendment of the certificate of incorporation sought in this action. (*Lorillard* v. *Clyde,* 122 N. Y. 41; *Reich* v. *Cochran,* 151 N. Y. 122; *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.,* 250 N. Y. 304; *Christal* v. *Petry,* 275 App. Div. 550, 301 N. Y. 562; *Wygod* v. *Makewell Hats,* 265 App. Div. 286.) II. The trial court was in error in not permitting proof at the trial of the agreements between respondent Ripley and appellant Storer. (*Merrihew* v. *Kingsbury,* 150 App. Div. 40; *Milliken* v. *McGarrah,* 164 App. Div. 110; *Gedney* v. *Diorio,* 190 App. Div. 85; *Goldstein* v. *Schleifer,* 209 App. Div. 899; *Road Garage Corp.* v. *Marcus,* 229 App. Div. 150; *Markowitz* v. *Markowitz,* 119 Misc. 609.) III. The trial court was in error in finding that the proposed amendments to the by-laws do not violate section 27 of the General Corporation Law. (*Hoyt* v. *Thompson's Executor,* 19 N. Y. 207; *People ex rel. Manice* v. *Powell,* 201 N. Y. 194; *McQuade* v. *Stoneham,* 263 N. Y. 323; *Benintendi* v. *Kenton Hotel,* 294 N. Y. 112; *Long Park, Inc.,* v. *Trenton-New Brunswick Theatres Co.,* 297 N. Y. 174.)

*Walter H. Liebman, Charles Nager* and *Herbert Robinson* for respondents. I. The prior judgments did not provide that Storer should " control " the corporation through a " fixed " board. No such issue was ever pleaded, considered, decided or adjudicated in the prior actions. There was no unanimous

written agreement restricting the size of the board. (*Smith* v. *Kirkpatrick,* 305 N. Y. 66; *Karameros* v. *Luther,* 279 N. Y. 87; *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.,* 250 N. Y. 304; *Rudd* v. *Cornell,* 171 N. Y. 114; *Fox* v. *Employers' Liability Assur. Corp.,* 239 App. Div. 671; *Evergreens* v. *Nunan,* 141 F. 2d 927.) II. The provisions of Justice EAGER's judgment were clear and explicit. There was no claim of ambiguity in the judgment at the trial. (*Barber* v. *Ellingwood,* 137 App. Div. 704; *People ex rel. McCanliss* v. *McCanliss,* 255 N. Y. 456; *Steel Co. of Southern California* v. *Associated Metals & Minerals Corp.,* 277 App. Div. 687; *Pendleton* v. *Weed,* 17 N. Y. 72.) III. Section 27 of the General Corporation Law does not bar the adoption of the by-law proposals.

VAN VOORHIS, J. This is a bitter controversy mainly between Douglas Ripley, the surviving brother of Robert L. Ripley who originated the pictorial series entitled " Believe It Or Not ", and Douglas F. Storer, who is the president of the corporation and appears to have been the trusted associate and main assistant of Robert L. Ripley in his lifetime. Storer apparently has not succeeded in acquiring or maintaining stock control of the corporation, and Douglas Ripley has — at least through liaison with Herlart, Inc. Nevertheless, while Storer was in a position to accomplish it, he succeeded in entering into a ten-year contract with the corporation, dated June 10, 1949, whereby he was exclusively to represent the corporation in radio, television, motion pictures and theatres and retain for his services 40% of all income received in connection therewith. By an extension of this agreement, Storer's representation was extended to " Believe It Or Not " postal cards, toys, puzzles, games and similar items. By a directors' resolution in 1951, it was provided that for the next year and every year thereafter until terminated by the board of directors, the president (Douglas F. Storer), and first vice-president (Douglas Ripley, brother of Robert), shall each be paid 20% of the gross sums earned by the corporation over and above $100,000 per annum in addition to their regular salary and/or expenses.

This action for a declaratory judgment was precipitated by demands by Douglas Ripley and Herlart, Inc., upon the board of directors to call a special meeting of stockholders to amend

the certificate of incorporation to provide that the number of its directors shall be five instead of three, to be elected by the stockholders, and further to amend the by-laws by adding a clause that no contract between the corporation and any other person for longer than one year shall be valid unless ratified by affirmative vote of a majority of the stockholders, and that no director shall be eligible to vote at a meeting of the board of directors for the ratification of any contract from which he derives any financial benefit; and further to amend the by-laws so as to provide that no resolution of the board of directors shall be valid authorizing payment of a bonus to any officer in excess of 5% of the corporation's net annual income, unless approved by a majority vote of the stockholders — and, further, to provide that '' any such resolution heretofore adopted shall be invalid and unenforceable unless so ratified and approved.''

As it now exists, the certificate of incorporation contains a clause that no such contract shall be affected or invalidated by the fact that a director is a party to such agreement.

Douglas Ripley is endeavoring to impair or cancel Storer's ten-year agreement, and to terminate the resolution of the board of directors awarding bonuses to Storer and to himself equally. Inasmuch as the directors' resolution instituting these bonuses provides that they shall be continued to be paid until revoked by another resolution, their payment will continue until a subsequent resolution of the board of directors is adopted. Although Douglas Ripley is able to control the voting of a majority of the stock, Storer has working control of the corporation in view of the circumstance that he and his associate, Harry E. Colwell, Jr., are two of the three directors, the other director being Douglas Ripley. In a previous action (*Storer* v. *Ripley,* 1 Misc 2d 235, hereafter described as the EAGER action, decided by Mr. Justice EAGER, whose judgment was affirmed, 282 App. Div. 950, motion for leave to appeal denied 282 App. Div. 1061, 306 N. Y. 985), Storer obtained a declaratory judgment which upheld the validity of a partly written and partly oral agreement that he and Harry E. Colwell, Jr. (also appellant here) shall be and continue to remain directors as long as Storer and one Millar owned stock. Justice EAGER's judgment also directed Douglas Ripley to vote for the election of Storer and Colwell as such directors in accordance with this agreement. Storer was prompted to

bring that action in view of steps taken by Ripley, through his majority stock control, to oust Storer and Colwell as directors.

Thus, at the present time, Storer assumes to be protected by his agency contract through June 10, 1959, and by his bonus which he shares equally with Douglas Ripley which by its terms cannot be cut off as long as he and Colwell elect to continue it through their majority vote upon the board of directors.

A procedure has been devised in an attempt to nullify Storer's continued working control of the corporation, by increasing the number of directors to five. In that event, although he cannot remove Storer and Colwell as directors, in view of Justice EAGER's judgment, Ripley can fill two new directorates with nominees of his own choosing, and then be able to outvote Storer on the board of directors. He could thus eliminate Storer as president of the corporation, and cancel Storer's bonus, presumably retaining his own. Storer's ten-year agreement would not be affected retroactively by the amendment to the by-laws requiring agreements for more than one year to be ratified by the stockholders.

There can be little doubt that the agreement whereby Justice EAGER held that Storer and Colwell cannot be removed as directors, contemplated that they were to retain working control. The history of the struggle for control and the interminable litigation between these men since the death of Robert L. Ripley could, in any event, leave little uncertainty that the object of the agreement to keep Storer and Colwell on the board was not " mere representation " of Storer's and Millar's interest as stockholders, but was to maintain Storer in practical control of the corporation which Justice EAGER found had survived the death of Robert L. Ripley mainly due to his personal services.

Nevertheless, it has been held in this action that the EAGER judgment merely continues Storer and Colwell in their positions as directors, but does not preclude increasing the number of directors by an amendment to the certificate of incorporation, pursuant to section 35 of the Stock Corporation Law. Special Term, affirmed by the Appellate Division, held in this action that there was nothing in the agreement on which Justice EAGER's judgment was based preventing an increase in the number of directors. In the course of the opinion at Special Term herein,

it was said (1 Misc 2d 281, 289): "If the existing certificate of incorporation contained a provision against increasing the number of directors, the right to increase would not exist (*Ripin* v. *United States Woven Label Co.*, 205 N. Y. 442); and if there were a written agreement by all the stockholders that the number shall not be increased, the right to increase would not exist (*Christal* v. *Petry,* 275 App. Div. 500, affd. 301 N. Y. 562). But as there is no provision in the existing certificate limiting the right to increase, and no unanimous written agreement of all the stockholders limiting the right, it follows that the right to increase is absolute (*Christal* v. *Petry,* 275 App. Div. 550, 557, *supra*)." It may well be in the absence in the certificate of incorporation of a limitation of the number of directors, that an agreement limiting the number would need to be made by all of the stockholders. However, the EAGER judgment stands as *res judicata* of whatever issues it decides between these parties. Therefore, if it determined that the contract in force between the parties provided that no increase in the number of directors can be made, it would be too late for Douglas Ripley to question the agreement underlying that decision upon the ground that the holders of a few of the shares did not subscribe to it. Having been held to be a valid and enforcible contract, no party to the former judgment can attack either the contract or the judgment which upheld it, and this is true regardless of whether the former judgment would have been affirmed or reversed if an appeal had been taken from it to this court. Ripley could no more attack a portion of the agreement limiting the number of directors, upon the ground that the contract was not approved by all of the stockholders, than he could, upon the same ground, renew his attack upon the part of it which required Storer and Colwell to be continued as directors.

The rule of *res judicata,* to be sure, does not apply to a determination of facts immaterial to the issue decided even though such facts have been alleged and controverted in the pleadings (*Karameros* v. *Luther,* 279 N. Y. 87). It is, of course, the judgment which is the bar, as stated in *Rudd* v. *Cornell* (171 N. Y. 114, 129) and the rule does not prevent the relitigation of a fact litigated and found in the earlier action if it was irrelevant to the issues therein and was not necessary to the final judgment. The classical statement is in *Schuylkill Fuel Corp.* v. *Nieberg*

*Realty Corp.* (250 N. Y. 304, 306–307) by CARDOZO, Ch. J.: " A judgment in one action is conclusive in a later one not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first ". In the case at bar, judgment in favor of plaintiffs-respondents would impair rights that are protected by the earlier judgment. It would invalidate the very contract on which Storer's and Colwell's rights depend which are established by the judgment in the former action. The immediate issue in the EAGER action was whether Storer and Colwell could be ousted as directors; it was held by the judgment that they could not be ousted due to the existence of a binding agreement which provided, among other things, that they were to continue as directors for so long as Storer or Millar held stock; the judgment in that action depended upon the finding of such an agreement, which formed the sole basis for the judgment; the finding of the existence of that agreement and the determination by the judgment of rights of the parties arising from it extended to holding that the entire agreement had been made and was in force between the parties. Manifestly, in order to constitute a contract, the minds of the parties were found to have met upon all of the factors entering into the contract, and if this contract enforced in the prior action provided that the number of directors was not to be increased, even though no attempt to increase the number was there involved, that portion cannot be ignored and other parts of the agreement severed from it and isolated as though instead of being one contract, it had been a succession of different agreements.

If this agreement found by Justice EAGER, and enforced by his judgment, which prevented the majority stockholders from voting Storer and Colwell out of office, provided not merely that they should continue as directors, but that, together with Douglas Ripley, they should be all of the directors of that corporation for the duration of the contract, then this judicial determination that such a contract existed between the parties and is enforcible cannot be relitigated in this action. It was essential to the decision in that action to find the existence of an agreement, for the reason that the adjudication that Storer and Colwell con-

tinue as directors was based upon it. Even though preventing an increase in the number of directors was not involved in that action, if any part of the contract which Justice EAGER held to be in existence were eliminated, that would invalidate the whole contract (since the contract was entire, and to strike out part of it would nullify the rest) and it would thus undermine the basis on which the EAGER judgment was rendered. In the language of *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.* (250 N. Y. 304, 307, *supra*) to do so would mean " that a different judgment in the second would destroy or impair rights or interests established by the first ". That the agreement as found by Justice EAGER contains a limitation upon the number of directors will be shown presently. What matters at the moment is that if it did contain such an item, the EAGER judgment necessarily is *res judicata* of this issue.

The continuance of Storer and Colwell as members of this board as a matter of contractual right and obligation, as the EAGER judgment held, is intimately connected with the limitation of the number of directors to three. The evidence in the EAGER action, as is soon to be pointed out in more detail, indicates that the agreement was that for so long as Storer or Millar held stock, Storer, Ripley and Colwell would be all of the directors of the corporation. The EAGER judgment found that it was in the written part of the agreement that Storer and Ripley must be present to form a quorum at the directors' meetings. If two formed a quorum, and a quorum had to be a majority, the conclusion would naturally follow that the contracting parties intended that the board should be limited to three members. But there are other and further indications that limitation of the number of directors to three was a portion of the agreement which Justice EAGER found to have existed between these parties.

Justice EAGER expressly found that the agreement between the parties consisted of three writings set forth as Exhibits " A ", " B " and " C " annexed to the complaint, and of oral promises. These were not found to be separate agreements, but to comprise one agreement. The judgment in terms declared: " That there is a valid agreement existing between the plaintiff, Douglas F. Storer, and the defendant, Douglas Ripley, whereby, *among other things,* they have mutually agreed that the plaintiff, Douglas F. Storer, and Harry

E. Colwell, Jr. shall be and continue to be directors of Believe It or Not, Inc., as long as the plaintiff or Donald G. Millar own stock in Believe It or Not, Inc., and that such agreement is binding upon the defendant, Douglas Ripley.'' (Italics supplied.)

The substance of this portion of the '' valid agreement '' was found chiefly upon the basis of oral testimony. Concerning this, the EAGER decision stated (1 Misc 2d 235, 241–242, *supra*):

'' Finally, when Millar was induced to indorse the note for the plaintiff and Ripley to finance the purchase of the 60 shares of stock, the parties and Millar and Colwell met at plaintiff's home and the plaintiff claims that it was then orally agreed that Colwell, nominated by Millar, should be a director, and that plaintiff and Colwell should continue as directors as long as the plaintiff or Millar owned stock in the corporation. The plaintiff, Millar and Colwell gave testimony in support of such an agreement. Reasonable inferences from all the evidence give support to the finding of such an agreement. The court was impressed with the testimony of plaintiff, Colwell and Millar and with their appearance and demeanor upon the stand. The court believes and finds that it was the understanding and agreement between plaintiff and Ripley that the plaintiff and Colwell should continue as directors as long as the plaintiff or Millar owned stock in the corporation. The court rejects the testimony of Ripley and his wife that there was no such agreement.

'' Notwithstanding the agreement found was by parol, it was valid and enforcible. (See *Wygod* v. *Makewell Hats,* 265 App. Div. 286, and *Kronenberg* v. *Sullivan Co. Steam Laundry Co.,* 91 N. Y. S. 2d 144, affd. 277 App. Div. 916.) Such an agreement is valid notwithstanding all of the stockholders are not parties thereto. (*Lockley* v. *Robie,* 301 N. Y. 371.) ''

Whether such an agreement had to be made by all of the stockholders is not in issue before us now. Under the doctrine of *res judicata,* a former adjudication is binding upon the parties concerning questions necessarily decided, whether of fact or of law. Justice EAGER specifically mentioned the portions of the agreement which he found, that '' among other things '' (to quote his language) provided that Storer and Colwell were to continue on the board. When the testimony is examined upon this subject, it is discovered that the very sentences in which it was stated that Storer and Colwell should be kept on as

directors are interwoven with their mutual promises that the directorate should remain at three members for the same period of time. In the conversations forming this part of the agreement, they were talking about control of the company. Justice EAGER recognizes this in the portion of his decision in which he said (1 Misc 2d 235, 240, *supra*): " The defendants Ripley and Herlart, Inc., have been allied in the defense of the action at bar, *and their attorneys concede that they seek to wrest control of the affairs of the corporation from plaintiff.*" (Italics supplied.) Maintenance of control in Storer presupposes no increase in the number of board members.

What is the substance of this agreement, as found by Justice EAGER? The testimony of Storer, Millar and Colwell, which Justice EAGER credited in support of such an agreement, relates to an occasion on February 11, 1951, at Storer's home. Storer testified that " It had been previously decided between Mr. Ripley and myself and confirmed by me and by Ripley, at that time, that we would be directors, too, so there would be three directors; Colwell, Storer, Ripley; and we would remain directors as long as we held stock." Millar testified concerning this conversation, at which Ripley and Storer were present, that Storer said that he and Ripley were buying sixty shares of stock as a joint venture; that he, Millar, was to have six shares, and that " as long as I had an interest in them, *the* directors were going to be Ripley, Storer and Colwell" (emphasis supplied). Millar further testified: " Also, it was clearly understood that Storer was going to operate Believe It Or Not because otherwise I wouldn't have given him anything." The interest in the corporation to which this witness refers was his indorsement of commercial paper and his status as stockholder. Colwell testified that the substance of this conversation was as follows: " Q. Have you told us all that was said about who were to be the directors? A. Yes, sir; simply that we three were to be *the* directors, and that's all there was to that, and everybody agreed on that." (Italics supplied.) This is the testimony on which Justice EAGER found that Storer and Colwell were to be continued as directors; and this very language which says that these three men were to be directors says that they are to be all of the directors. The agreement found by Justice EAGER necessarily included the latter as well as the former, for it is included

in the same conversation which his decision says that he credited and which forms the basis for his judgment. He found this agreement as a fact in the former action. He stated that he rejected the conflicting testimony of Ripley and his wife. We are not passing upon any question of fact; we are merely deciding a question of law arising from the existence of the agreement which he found as a fact; the undisputed evidence before us is that Justice EAGER rejected the testimony of Ripley and his wife, and found that the testimony of plaintiff (Storer), Millar and Colwell expressed the agreement on the basis of which his judgment was rendered. The analysis which has been made shows that the conversation which forms this part of the contract immediately concerned both the continuance of these three men as directors and the limitation of the number of directors to three. The same sentences express both thoughts, and the ideas coalesce. Storer and Colwell were to control the operation of the company for the duration of the agreement. The minds of the parties met upon both of these points, and if they did not meet on both, they met on neither. If you remove the part about the number of directors continuing to be three, it would destroy the whole contract on which these parties agreed. That would destroy the basis for Justice EAGER's decision.

It is familiar law that where a contract has been adjudged to be valid and enforcible, it is thereby rendered binding between the same parties as *res judicata,* even though the subsequent proceedings are on a different cause of action arising out of the same agreement (50 C. J. S., Judgments, § 712, pp. 168–173). At page 173, it is written: '' Another statement of the rule is that any right, fact or matter in issue, and directly adjudicated on, or necessarily involved in, the determination of an action before a competent court in which a judgment or decree is rendered on the merits is conclusively settled by the judgment therein and cannot again be litigated between the parties and privies whether or not the claim or demand, purpose, or subject matter of the two suits is the same.'' This rule has been applied to successive actions arising from different aspects of the same contract in numerous cases (*Larme Estates* v. *Omnichrome Corp.,* 250 App. Div. 538, affd. 275 N. Y. 426; *Becker* v. *New Penn Development Corp.,* 271 App. Div. 280, affd. 297 N. Y. 497; *President & Directors of Manhattan Co.* v. *Parker,* 258 App.

Div. 737; *Goldberg* v. *Eastern Brewing Co.*, 136 App. Div. 692). In the latter case, quotation is made from *Secor* v. *Sturgis* (16 N. Y. 548, 558) as follows: '' The true distinction between demands or rights of action which are single and entire, and those which are several and distinct is, that the former immediately arise out of one and the same act or contract, and the latter out of different acts or contracts. Perhaps as simple and safe a test as the subject admits of, by which to determine whether a case belongs to one class or the other, is by inquiring whether it rests upon one or several acts or agreements.'' This principle was applied in the *Goldberg* case (*supra*) to the doctrine of *res judicata*. Here both causes of action manifestly arise out of the same contract, which is not severable insofar as this issue is concerned.

The pleadings, decision and judgment in the EAGER trial were admitted in the record on this appeal. The testimony was offered in evidence but excluded and marked for identification. The established rule is that record evidence which is clearly identified may be considered on appeal under such circumstances. '' This has frequently been decided in respect to records of judgments, exemplification of bankrupt discharge, certificates of naturalization, etc. * * * Evidence of this character is received by the appellate court for the reason that, being in its nature incontrovertible, it would be idle to send the case back for a new trial for the sole purpose of admitting it.'' (*Dunham* v. *Townshend,* 118 N. Y. 281, 286; *People* v. *Flack,* 216 N. Y. 123, 129; *Matter of City of New York [Newport Ave.],* 218 N. Y. 274, 279; *Matter of Cooper,* 93 N. Y. 507; *Rossbach* v. *Rosenblum,* 260 App. Div. 206; Cohen and Karger, Powers of the New York Court of Appeals, § 168.) We may therefore consider the evidence in the EAGER record, even though it was excluded, if it be material to the issue as it clearly is. In Black on Judgments (Vol. 2, § 624, p. 950), the author states concerning *res judicata:* '' It is now fully settled upon the authorities that extrinsic evidence, when not inconsistent with the record and not impugning its verity, is admissible for the purpose of identifying the points litigated and decided in a former action between the same parties, when the judgment therein is set up as a bar or estoppel in the case on trial.'' (Citing *Carleton* v. *Lombard Ayres & Co.,* 149 N. Y. 137.)

Evidence received upon a former trial is admissible where it is necessary in order to clarify what was decided by the judgment in cases where the rule *res judicata* is invoked (*Barber* v. *Ellingwood,* 137 App. Div. 704, 708; 2 Freeman on Judgments [5th ed.], § 771; *Peoples Gas & Elec. Co.* v. *City of Oswego,* 207 App. Div. 134, 139; *New York Central R. R. Co.* v. *Barnet,* 192 App. Div. 784, 786–787). Under these authorities, the testimony in the trial before Justice EAGER, which has just been analyzed, should have been admitted. It demonstrates that the same contract precludes increasing the number of directors which was held to require the continuance of Storer and Colwell as directors in the prior action.

For these reasons, the judgment in *Storer* v. *Ripley* (1 Misc 2d 235, affd. 282 App. Div. 950, motion for leave to appeal denied 306 N. Y. 985, *supra*) is conclusive and requires that the judgment appealed from should be reversed and the amended complaint dismissed insofar as it asks for an adjudication that plaintiffs-respondents may insist upon calling a special meeting of stockholders to increase the number of directors to five, and amend the by-laws accordingly.

The judgment of Special Term as affirmed by the judgment appealed from should be modified in the following respects:

Paragraph 1 (cl. [a]) is eliminated;

Paragraph 3 is eliminated insofar as it refers to clause (a) of paragraph 1;

Paragraph 4 is unchanged except as otherwise provided in the modifications of paragraph 7;

Paragraph 5 is unchanged except as otherwise provided in the modifications of paragraph 7;

Paragraph 6 is unchanged except as otherwise provided in the modifications of paragraph 7;

So much of paragraph 7 is eliminated as dismisses the defenses of *res judicata* based upon the judgment rendered by Mr. Justice EAGER; and it is further amended so as to provide that no amendment to the by-laws permitted by the judgment to be entered upon the remittitur herein shall impair any existing contractual right under any contract heretofore made between Believe It Or Not, Inc., and either appellant, nor shall it render him ineligible to participate in making or voting for the ratification of any

contract of a type described in paragraph 1 (cl. [b], subd. [2]) of this judgment between said corporation and parties other than its directors from which either appellant may derive commissions or other benefits under now existing contracts; nor shall any such amendment to the by-laws operate retroactively so as to impair any resolution of the board of directors heretofore adopted;

Paragraph 8 is eliminated.

As so modified, the judgment should be affirmed, with costs of this action in all courts to the appellants against the plaintiffs-respondents.

CONWAY, Ch. J., DESMOND, FULD, FROESSEL and BURKE, JJ., concur; DYE, J., taking no part.

Judgment modified and matter remitted to Special Term for further proceedings in accordance with the opinion herein and, as so modified, affirmed, with costs in all courts to appellants against plaintiffs-respondents.