CITIBANK, N. A., Plaintiff-Appellant,

v.

GRAPHIC SCANNING CORP. and
Graphnet Systems, Inc.,
Defendant-Appellees.

No. 675, Docket 78–7647.

United States Court of Appeals,
Second Circuit.

Argued Jan. 24, 1980.

Decided March 20, 1980.

Clarence W. Olmstead, Jr., New York City (Mark P. Zimmett and Shearman & Sterling, New York City, of counsel), for plaintiff-appellant.

Peter A. Jaffe, New York City (Jaffe & Asher, New York City, of counsel), for defendant-appellees.

Before SMITH and FEINBERG, Circuit Judges, and BRIEANT, District Judge.[*]

BRIEANT, District Judge:

Citibank, N.A. ("Citibank"), plaintiff-appellant, seeks to review a judgment of the district court for the Southern District of New York (Kevin Thomas Duffy, D. J.), which granted summary judgment dismissing its complaint against Graphic Scanning Corp. ("Scanning") and Graphnet Systems, Inc. ("Graphnet"). Jurisdiction in the district court was based on § 207 of the Communications Act, 47 U.S.C. § 207 ("the Act") and 28 U.S.C. § 1331.

Graphnet is concededly a specialized common carrier of messages by wire, whose services are subject to jurisdiction of the Federal Communications Commission ("the FCC") and are within the regulatory provisions of the Act, particularly § 201, *et seq.* Scanning is the corporate parent of Graphnet; it does not consider itself a common carrier, and has neither filed tariffs for such service nor has it come under FCC regulation.

Citibank operates a large number of branch banking offices in this country and abroad. By a written agreement of December 10, 1976, Citibank contracted with Scanning for a minimum number of domestic

* Pursuant to § 0.14 of the Rules of this Court, this appeal is being determined by Judge Feinberg and District Judge Brieant (of the Southern District of New York sitting by designation) who are in agreement on this opinion. Judge Smith, who heard the argument, unfortunately died on February 16, 1980. Prior to his death, Judge Smith voted to affirm the judgment, as modified, and was in agreement with his colleagues on the disposition of the case. He did not have the opportunity, however, to see this opinion.

refile message transactions to be carried to or from Citibank during a sixty month period at a cost to Citibank to be fixed pursuant to that agreement. Excluded were messages which could be carried by Citibank's own internal or intra-corporate facilities. Scanning had been rendering similar services prior to the agreement, and had designed and developed a computer operated system "customized" for Citibank. The outgoing traffic was converted by Scanning's computer system and delivered by wire to terminals of common carriers of messages by wire, including Graphnet, while the incoming traffic from such carriers was received and processed by Scanning's computer and thereby conveyed from the carrier into Citibank's internal computer operations. Viewed simply, the wire services of Scanning's computer obviated the messenger service by which Citibank would have placed its wire transfer orders and other traffic in the hands of Graphnet and other common carriers for wire transmission. Prior to 1974, Graphnet had served Citibank directly by messenger pickup which carried such messages to Graphnet's New Jersey office for wire transmission. The system developed by Scanning was in effect an "automated interface" between Citibank's electronic data processing and that of Scanning, which eliminated the messengers, and allowed Citibank to place its messages with Graphnet and others for carriage, through Scanning.

It is Citibank's theory that as a result of this arrangement Scanning became a common carrier and because of a failure to file tariffs, or to comply with filed tariffs, and because of a failure to preserve the separation of its activities and facilities from those of its corporate parent, Graphnet and probably also Scanning, have violated various provisions of the Act, and the rules promulgated thereunder by the FCC.[1] As a result of disputes between them, Citibank in 1978 refused to pay Scanning for certain services already rendered under the agreement, and ceased to tender its traffic to Scanning, which sued Citibank in New York State Supreme Court, New York County (the "state action") as discussed below. Thereafter, in the district court, Citibank sued both Scanning and its subsidiary Graphnet claiming illegality by reason of violations of the Act and Regulations, and seeking to recover as damages the total sums paid to Scanning and Graphnet thereunder, in excess of $1,700,000.00.

■ Insofar as concerns the claim against Graphnet the district court concluded correctly that the issues, concerning as they do the rates charged by a common carrier and other claimed violations of the Act, should first be the subject of administrative determination by the FCC pursuant to §§ 207–09 of the Act, and that such determination could thereafter be the subject of judicial review pursuant to 47 U.S.C. § 402. Accordingly, dismissal as to Graphnet was without prejudice. *Booth v. American Telephone & Tg. Co.*, 253 F.2d 57, 58 (7th Cir. 1958); *Western Union Tg. Co. v. Graphic Scanning Corp.*, 360 F.Supp. 593 (S.D.N.Y.1973). Citibank's brief on this appeal does not take issue with that resolution.

A similar disposition is appropriate with respect to Citibank's claims against Scanning. The FCC, which has a special expertise in such matters, should determine upon a proper evidentiary record whether the activities of Scanning were such as to violate the Act, or bring it within regulation.[2]

■ The district court dismissed with prejudice as to Scanning because it regarded these issues precluded as a result of the state court action mentioned above in which

---

1. The complaint charges violation by Graphnet and Scanning of Title II of the Act and § 64.702 of the FCC Regulations, particularly § 64.-702(c)(1), (2) and (3), 64.702(d), and violations of §§ 201(b), 202 and 203 of the Act by Graphnet.

2. At issue is whether under all the circumstances of the case the service being furnished by Scanning was a communications or message switching service, or merely an electronic data processing function. See *In re Western Union Telegraph Co. v. Graphic Scanning Corp.*, 71 F.C.C.2d 1122 (1979). We express no opinion on this point.

Scanning had recovered partial summary judgment against Citibank for unpaid carriage of messages. In that action, Citibank had pleaded, among other things, the affirmative defense of illegality, in that Scanning in rendering the services sued for, was in violation of the Act and Regulations. The state court disposed of the matter by summary judgment, without taking any proof of facts. In effect, it expressed a conclusion of law. The state court had subject matter jurisdiction to adjudicate the contract claims, and to the extent the claim of illegality was pleaded as an affirmative defense, it was a necessary issue for that court to resolve in order to decide the contract claim. This is so notwithstanding that the Act vests exclusive jurisdiction over claims for damages for statutory violations of the Act in the federal courts or the FCC, 47 U.S.C. § 407. *Pan American Petroleum Corp. v. Superior Court of Delaware,* 366 U.S. 656, 664–65, 81 S.Ct. 1303, 1308, 6 L.Ed.2d 584 (1961); *Great Northern R. Co. v. Merchants Elevator Co.,* 259 U.S. 285, 290–91, 42 S.Ct. 477, 478–79, 66 L.Ed. 943 (1922). Graphnet was not a party to the state action, nor was it a party to the contract with Citibank under which the traffic moved.

We hold that the state court judgment conclusively determined that under state law the contract was not void for illegality, and that Citibank is indebted for sums due thereunder for services rendered. But that judgment is not binding in any sense on the FCC, and is not preclusive of Citibank's claim before the FCC, or in a federal court following completion of administrative proceedings there, for any damages incurred by Citibank as a result of any violation of the Act or Regulations by Scanning. We note first that §§ 206 and 207 of the Act authorizes an award of damages in such a case; it does not void the contract of carriage itself as to services already rendered, on grounds of illegality. Furthermore, because the state court found no facts, but merely expressed a conclusion of law, its determination that Scanning is not a common carrier is not preclusive in later federal litigation by reason of collateral estoppel. *Lyons v. Westinghouse Electric Corp.,* 222 F.2d 184 (2d Cir.), *cert. denied* 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (1955); *Abramson v. Pennwood Investment Corp.,* 392 F.2d 759 (2d Cir. 1968). Nor should the preclusive effect of a state court judgment in a federal court exceed the effect it has in the court where rendered. New York would not regard Citibank as precluded for all time from contending in future cases that Scanning was acting as a common carrier or in violation of the Act. The principle of *res judicata* in New York prevents the relitigation of the same issue between the same parties. It is only when the subsequent claim or cause of action has such a measure of identity that a different judgment in the second action would destroy rights or interests established in the earlier action that the principle will be applied. *Ripley v. Storer,* 309 N.Y. 506, 513, 132 N.E.2d 87 (1956). The state judgment adjudicates that the contract is valid at least as to past performance and that the sums earned thereunder must be paid. No contested constituent facts were tried and determined to reach the legal conclusion expressed that Scanning was not a common carrier. Under such circumstances, a New York court in a later case would not consider itself precluded from trying the underlying facts which affect the legal conclusion previously determined on motion. *Baksi v. Wellman,* 271 App.Div. 422, 65 N.Y.S.2d 894, 897 (1st Dept. 1946). Indeed, to invoke collateral estoppel the issue in the second proceeding must be "identical with that in the first." *People ex rel. Watchtower Bible & Tract Society v. Haring,* 286 App.Div. 676, 146 N.Y.S.2d 151 (3rd Dept. 1955). The issue determined in the state court action was merely whether violation of the Act required forfeiture by a vendor of services of amounts due according to contract. This was tantamount to giving "legal effect to a completed sale of onions at a fair price" dealt with in *Kelly v. Kosuga,* 358 U.S. 516, 521, 79 S.Ct. 429, 432, 3 L.Ed.2d 475 (1959). It would not preclude recovery in a later lawsuit of Citibank's damages, if any, proximately caused by any

226

violation of the Act by its vendor. This is particularly so, as here, when the claim is justiciable only in a federal court or before the FCC.

The judgment appealed from is affirmed insofar as concerns Graphnet Systems, Inc. and is modified as to Graphic Scanning Corp. to provide that dismissal is without prejudice to pursuit by Citibank of its administrative remedies before the FCC. No costs.