Samuel C. Coleman, J.
The decision of Mr. Justice Eager (1 Misc 2d 235, affd. 282 App. Div. 950) and the later decision by the Court of Appeals (309 N. Y. 506) on another aspect of the controversy give very fully the history of the seemingly endless litigation and enable me to state my views on the questions before me compendiously.
Following the invalidating of the defendants’ attempt to circumvent the effect of Mr. Justice Eager’s judgment, the differences among the several stockholders became more and more exacerbated. Matters reached an impasse, the affairs of the corporation are in the hands of a receiver appointed by this court, and Colwell resigned as director. Storer thereupon brought this action to have his rights determined with respect to a successor to Colwell and for other relief and also for money damages. Pending the action Ripley die'd, and his widow, his executrix, has been brought in as a defendant. The present posture is this: There is only one director, Storer, where three are authorized. Storer asserts that “ it is now plaintiff’s principal contention that he is entitled to buy in the Ripley stock from his widow and his executrix.” If this is decided against him, he says that the question before me is 1‘ whether or not Storer and Ripley agreed as stockholders in February, 1951 that Storer was to have practical working control of Believe It Or Not, Inc. through the perpetual election, so long as Storer held stock in the corporation, of a 3-man board of directors, each of whom had to meet with his approval.”
There are expressions here and there in the opinion of Mr. Justice Eager, and in the opinion of the Court of Appeals which tend to support Storer’s present contention that in effect he was to be the corporation and that the rights of other stockholders were subject to his domination. But the courts did not so decide. Mr. Justice Eager decided that there was an agreement whereby Storer and Colwell were to be directors (out of three) so long as Storer or one Millar owned stock and that the other stockholders were to do nothing to interfere with that *664 arrangement. And the Court of Appeals held that the attempt on the part of the other stockholders who held a majority of the stock to increase the number of directors from three to five and so dislodge Storer from his position of dominance violated the decree of Mr. Justice Eager and would not be countenanced. Nothing more was decided. The question whether the death of either Storer or Ripley gave the survivor the option to purchase the stock of the one dying was not discussed in any way; that question is open.
I do not think plaintiff’s principal contention is sound.
Of course agreements may provide for their continuance after the death of one of the parties; and of course restrictive agreements on the alienability of property after death will be upheld (cf. Allen v. Biltmore Tissue Corp., 2 N Y 2d 534; Scruggs v. Cotterill, 67 App. Div. 583). But there must be such an agreement and if it is to operate as such a restriction, that consequence must be clearly expressed (Stern v. Stern, 146 F. 2d 870; Lane v. Albertson, 78 App. Div. 607; Taylor’s Administrator v. Taylor, 301 S. W. 2d 579 (Court of Appeals, Ky.); see 65 Harv. L. Rev. 773, 791). I cannot find that there.was such an agreement. The parties did not mention it in any of their writings; and the oral testimony, whether on the trial before Mr. Justice Eager or before me is too meager to justify any conclusion as to the consequences of death. Storer and Ripley may have thought about it; but they said nothing about it, either in writing or orally. And there are no reasons calling upon me to say that from the nature of tilings they must have intended it. Storer says that must have been so, else he would not have made the agreement he did; to which Ripley’s widow replies that it is just as unthinkable that Ripley would have considered having his shares of stock leave his family — his widow and his two sons — and go to a stranger.
The written part of the agreement is scant in itself. It. refers to the fact that Ripley was to purchase 14 shares, Storer 17, “other interested parties” 29 shares. No other “interested parties V appeared except possibly Millar, who obtained 6 shares under a later agreement. Then came this provision: “ The undersigned [Storer and Ripley] agree that the stock interest of the parties hereto shall not be sold, signed [sic], transferred or hypothecated unless it is first offered to the other at the purchase price or book value, whichever is the greater, payment to be made in 90 days.” The parties agreed to establish a voting trust under which the stock “ owned and to be owned ” by them was to be voted as a unit. No such trust was established and Storer could not compel the stock to be *665 voted as a unit (1 Misc 2d 235 [Mr. Justice Eager], affd. 282 App. Div. 950; N. Y. L. J., June 22,1956, p. 7, col. 5 [Mr. Justice Ga vagan] , affd. 2 A D 2d 839; 8 Misc 2d 435 [Mr. Justice Stevens] ). The parties were to become directors and there were other provisions as to employment of Storer and Ripley, the offices they were to hold, and their compensation. The presence of both of them was necessary to constitute a quorum of the board and no important decision could be taken without the presence of both. Nowhere is there a provision as to what was to occur in the event of death and the agreement contained no provision binding the respective estates of the parties. It contemplated a personal arrangement between Storer and Ripley with respect to the management of the affairs of the corporation, the employment of each, the services they were to render, their election as directors and the option to purchase back from each other. It seems to me that we need much more than this to say that an agreement of this kind between the two survived the death of one and gave the survivor the option to purchase the stock. In the later agreement involving Millar and his obtaining six shares, three each from Storer and Ripley — where there was restraint on Millar’s selling, the agreement specifically was made binding upon the respective estates of all three.
As to the alternative contention of the plaintiff, that is, that the agreement enables him to name the other two directors and to do so in perpetuity, I find that too untenable. Storer and Colwell were to remain directors so long as Storer or Millar owned stock, but just as there is no provision as to the disposition of stock in the event of death, similarly there is no provision for the election of a director who dies or resigns. It is unusual to give a holder of a minority of stock absolute and untrammeled control over the affairs of a corporation in perpetuity. Assuming an agreement to give such control to be valid, it would require absolutely specific words to call for such a conclusion. Such a conclusion presupposes that the other two directors would be dummies — completely subservient to the will of the third. Colwell was not such a dummy; Mr. Justice Eager specifically so found; and it was not intended that he should be. His election as director was the result of agreement between Ripley and Storer; it was not the result of Storer’s domination, and we cannot say that Ripley, by agreeing to the choice of Colwell, agreed to leave the choice of Colwell’s successor to Storer. “ [T]here is nothing to bind Storer and Ripley to vote as a unit for a particular nominee unless we hold that Justice Eager’s decision which assured *666 the plaintiff of working control of Believe It Or Not, Inc., was intended to apply regardless of any change of circumstances caused by the resignation of their original nominee. We are not prepared to so hold. The faith and confidence which the parties might have had in Colwell may well not extend to others who might be proposed as his successor ”. (Stevens, J., on cross motions for summary judgment, 8 Mise 2d 435, 437.) The result would be the same if Colwell had died; Storer could not appoint a director to take his place. And similarly he cannot appoint a director to take Ripley’s place. Even if a close corporation is to be considered as having some of the attributes of a partnership, it remains true that unless there is a specific agreement to the contrary a partnership is dissolved by the death of one of the partners.
There are two vacancies in the board now and they must be filled by election of the stockholders. One director has died and the other has resigned. The original purpose of the agreement is no longer capable of fulfillment; its objective has been frustrated. The defendants have not suggested that Storer cannot be continued as director.
The third alternative suggested by the plaintiff is that I direct the sale of stock held by both Ripley and Storer at public auction. I have no power to do so.
The cause of action by the plaintiff for damages is dismissed. There was no adequate proof of any wrongdoing or that the plaintiff was damaged; plaintiff’s brief does not even suggest an amount or a measure of damages. What proof there was, tended to show that because Ripley and Storer were working at cross-purposes it was rather the corporation that was prevented from functioning properly to its disadvantage.
It is unnecessary to consider the defenses presented in the pleadings. No relief is sought against the receiver of the corporation. The complaint in all its causes of action is dismissed.