GLOBE SLICING MACHINE CO., Inc.
and Lewis Novoting, Plaintiffs,

v.

Rolf K. HASNER and Astrid Sivertsen,
Defendants.

United States District Court
S. D. New York.

Nov. 19, 1963.

Anthony F. Avallone, W. Nyack, N. Y., for plaintiffs.

Simpson, Thacher & Bartlett, New York City, for defendants, Richard Hawkins, Rogers M. Doering, New York City, of counsel.

THOMAS F. MURPHY, District Judge.

These are cross-motions for summary judgment. Jurisdiction is based on diverse citizenship and New York law is applicable.

The principal contested legal issue is whether the bylaws of the Globe Slicing Machine Company prohibiting the "sale

or disposition" of shares of its capital stock without first giving the corporation or its other stockholders an opportunity to purchase are applicable to transfers consequent upon the death of a shareholder. On this issue the parties agree that there is no question of fact.

Globe was incorporated in New York in 1925. Its principal officers were Peter M. Sivertsen, president, who died in 1962, and Lewis Novoting, secretary and treasurer, and one of the plaintiffs. Sivertsen at the time of his death owned 136 shares of Class A stock (the only class entitled to vote) and Novoting 107 shares of the same class, the total of both, 243 shares, are all the outstanding shares of Class A. By will admitted to probate in Connecticut, Sivertsen bequeathed his 136 shares to his wife, the defendant Astrid Sivertsen, and named Rolf K. Hasner, the other defendant, as executor. Hasner has qualified as such and has demanded registration of the 136 shares in his name as executor of the estate of Sivertsen, deceased, and intends to vote the shares at the next stockholders meeting.

Plaintiffs have offered to buy the 136 shares at a formula price set forth in the bylaws but Hasner has refused to offer the shares to them. Plaintiffs seek an injunction to prevent Hasner from exercising any rights in the shares and for specific performance compelling him to offer the shares for purchase pursuant to the bylaws.

Defendants have counterclaimed seeking a declaration of their rights to the stock and a declaration that the alleged restraints on the sale or disposition of the stock are inapplicable. Other issues and facts will be discussed after resolution of this principal issue.

The bylaws in question, passed in 1930, read as follows:

"Article IX.
"SALE OR DISPOSITION OF STOCK.
"Sec. 1. RESTRICTIONS AND CONDITIONS PRECEDENT TO SALE OR DISPOSITION BY STOCKHOLDERS OF SHARES OF CAPITAL STOCK OF THIS COMPANY. No sale or disposition of any shares of the capital stock of this corporation by any stockholders shall be valid unless and until he shall give notice in writing of such intention to the corporation, and to all the present stockholders of the company (with the exception of Mr. Frederick Singer) whereupon the company and all of said stockholders shall jointly/ [sic] and or severally have the option and right to purchase the same within thirty days after receiving such notice, for the higher price of either of the following:

[The by-law here sets forth a formula for determining the price.].

"Sec. 2. TERM OF RESTRICTION OF SALE OR DISPOSITION BY STOCKHOLDERS OF SHARES OF CAPITAL STOCK OF COMPANY. The foregoing restrictions shall continue until December 31st, 1937, and shall thereafter be automatically renewed from year to year. However, any of the present stockholders shall have the right to withdraw from this agreement after said December 31st, 1937, provided, that he shall give notice in writing by registered mail to each of said other present stockholders of his withdrawal from the terms of said restrictions, six months prior to December 31st, 1937, or six months prior to any aforementioned extension period."

■■ We agree with defendants and hold that such bylaws are not applicable to transfers or disposition consequent on the death of a stockholder. Although no New York case that has been called to our attention is directly apposite it seems clear that although New York law will honor restrictive agreements on the alienating of property after death it must be "reasonable" and clearly expressed. Allen v. Biltmore Tissue Corp., 2 N.Y.2d 534, 161 N.Y.S.2d 418, 141 N.E.2d 812 (1957).

The bylaws here say not one word about conditions or restrictions in the event of death, nor is any reference made to *heirs or assigns or legal representatives*. If more were needed Sec. 2 of Article IX of the bylaws giving the stockholder the right to withdraw from such restrictive agreement upon giving six months notice is quite relevant; also Article V of the bylaws provides that transfers on the books of the corporation must be by the person named in the certificate or by his *legal representative*.

We are supported in our conclusion by three New York cases in which the restrictions on transfer, although more severe than the instant bylaws, were held not applicable after death. In Matter of Starbuck 251 N.Y. 439, 167 N.E. 580, 65 A.L.R. 216 (1929), the court through Lehman, J., held that § 66 of the Stock Corporation Law which permitted a corporation to refuse to transfer shares of a stockholder who was indebted to the corporation until the indebtedness was paid, was not applicable to a transfer taking place automatically at the death of the stockholder and required the corporation to transfer the shares upon its books to the name of the stockholder's executrix.

In Lane v. Albertson, 78 App.Div. 607, 79 N.Y.S. 947 (2d Dept., 1903), a bylaw reading: "No member of the association, nor his executors, administrators, or other legal representatives, shall sell or transfer any of the capital stock of the association held by him or them, without first offering the same for sale to the association * * *" did not apply either to the transfer of the shares from the decedent to his executor or to the transfer from the executor to the legatee.

In Storer v. Ripley, 12 Misc.2d 662, 178 N.Y.S.2d 7 (Sup.Ct., 1958) a bylaw providing: "The undersigned * * * agree that the stock interest of the parties hereto shall not be sold, signed [sic], transferred or hypothecated unless it is first offered to the other at the purchase price or book value, whichever is the greater, payment to be made in 90 days." was held not to apply to transfers consequent after death of one of the stockholders. In commenting upon restrictions on alienability after death it said: "But there must be such an agreement and if it is to operate as such a restriction, that consequence must be clearly expressed." 178 N.Y.S.2d at p. 10.

Plaintiffs misplace reliance on Allen v. Biltmore Tissue Corp., supra, because in Allen the bylaws specifically provided: "In case of the death of any stockholder, the Corporation shall have the right to purchase the stock from the legal representative of the deceased." Globe's bylaws in question have no such restriction. Their further reliance on Boston Safe Deposit & Trust Co. v. North Attleborough Chapter of American Red Cross, 330 Mass. 114, 111 N.E.2d 447 (1953) if contrary to New York is not controlling since Massachusetts law is not applicable under Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

In view of our holding defendants' further argument that plaintiffs have in the past construed the bylaws as having no such restrictions, particularly with reference to the treatment of the deceased Mrs. Novoting's shares, need not be considered.

Accordingly, since defendant Hasner under New York and Connecticut law (Allen v. Biltmore Tissue Corp., supra; Lynch v. Skelly, 138 Conn. 376, 85 A.2d 251 (1951) is vested as executor with the title to the personal property of the decedent, Sivertsen, and since the restrictions in the bylaws are not applicable he is entitled to a judgment (1) dismissing the complaint; (2) declaring that he as executor of Peter M. Sivertsen is the owner of and entitled to vote the 136 shares of the common stock of Globe, and (3) that the alleged restrictions on the sale or disposition of the shares of Globe are inapplicable to the transfer consequent upon the death of Peter M. Sivertsen.

Another issue in the case relates to the recent amendment of Globe's charter which defendants' counterclaim seeks to have declared null and void. Here, too, there is no issue of fact.

In January, 1963, a certificate of amendment to the certificate of incorporation of Globe was filed with the Secretary of State of New York. The complained of part reads:

"3. The Certificate of Incorporation is hereby amended to add a provision pursuant to § 9 of the Stock Corporation Law requiring greater than a majority or plurality vote of shareholders reading in full as follows:

" 'ELEVENTH: STOCKHOLDERS MEETINGS

" '(1) At all meetings of stockholders, except where it is otherwise provided by law, it shall be necessary that stockholders, representing in person or by proxy 76% of the capital stock shall be present to constitute a quorum.

" '(2) At all meetings of the stockholders, all questions, the manner of deciding which is not specifically regulated by statute, shall be determined by a 76% vote of the stockholders present in person or by proxy; provided, however, that any qualified voter may demand a stock vote in which case each stockholder present in person or by proxy shall be entitled to cast one vote for each share of stock owned or represented by him. All voting shall be viva voce, except that a stock vote shall be by ballot, each of which shall state the name of the stockholder voting and the number of shares owned by him and in addition if such a ballot be cast by proxy, the name of the proxy shall be stated. The casting of all votes at Special meetings of stockholders shall be governed by the provisions of the General Corporation Laws of this State.

" '(3) The by-laws of this corporation may be altered, amended, repealed or added to by an affirmative vote of the stockholders representing 76% of the capital stock at any annual meeting or at a special meeting called for that purpose, provided that a written notice shall have been sent to each stockholder of record at his last known post office address, at least ten (10) days before the date of such annual or special meeting, which notice shall state the alterations, amendments or changes which are proposed to be made in such by-laws. Only such changes as have been specified in the notice shall be made. If, however, all the stockholders shall be present at any regular or special meeting, these by-laws may be amended by a unanimous vote without any previous notice.' "

The authority for such amendment to its charter is, as stated in the affidavit of plaintiff Novoting and a Mr. Carey, the record of the stockholders meeting of January 25, *1930*, at which the following resolutions were adopted:

"Upon motion duly made, seconded and unanimously carried, Sections 2 and 4 of Article I of the by-laws of the company were amended to read as follows:

"Sec. 2. QUORUM. At all meetings of stockholders, except where it is otherwise provided by law, it shall be necessary that stockholders, representing in person or by proxy 76% of the capital stock, shall be present to constitute a quorum.

"Sec. 4. VOTING. At all meetings of the stockholders all questions, the manner of deciding which is not specifically regulated by statute, shall be determined by a 76% vote of the stockholders

present in person or by proxy; provided, however, that any qualified voter may demand a stock vote, in which case each stockholder present in person or by proxy, shall be entitled to cast one vote for each share of stock owned or represented by him. All voting shall be viva voce, except that a stock vote shall be by ballot, each of which shall state the name of the stockholder voting and the number of shares owned by him, and in addition, if such ballot be case [sic] by proxy, the name of the proxy shall be stated. The casting of all votes at special meetings of stockholders shall be governed by the provisions of the General Corporation Laws of this State.

"Upon motion duly made, seconded and unanimously carried, Sections 1, 2, 8, 9, and 10 of Article II of the by-laws of the company were amended to read as follows:

"Sec. 1. NUMBER. The affairs and business of this Corporation shall be managed by a Board of Four Directors, who need not be stockholders of record, and at least one of such directors shall be a resident of the State of New York.

"Sec. 2. HOW ELECTED. At the annual meeting of stockholders, the four persons receiving a plurality of the votes cast shall be directors and shall constitute the Board of Directors for the ensuing year * * * "

■ Putting aside temporarily defendants' objections that the 1930 resolutions were only amendments of the by-laws, and the objections that Globe failed to include in its amended certificate resolutions of the same date permitting directors to be elected by a plurality vote, it is clear that such resolutions were contrary to the law as it then existed and against the public policy of the State of New York because they violated § 55 of the Stock Corporation Law.

In Benintendi v. Kenton Hotel, Inc., 294 N.Y. 112, 60 N.E.2d 829, 159 A.L.R. 280 (1945) the court of appeals struck down a bylaw requiring a unanimous stock vote for the election of directors and characterized such bylaw as "intrinsically unlawful because it contravenes an essential part of the State policy, as expressed in the Stock Corporation Law * * *." Later, in Matter of Faehndrich, 2 N.Y.2d 468, 161 N.Y.S.2d 99, 141 N.E.2d 597 (1957), the same court held invalid a bylaw requiring a quorum of two-thirds of the shares at a special meeting of the stockholders.

The directors of Globe and its principal stockholders, as the minutes indicate, knew that such a bylaw was invalid having been so advised on a number of occasions, and they elected directors by a plurality and not by 76%.

Obviously what plaintiffs wanted to do in their attempt to amend the certificate of incorporation was to take advantage of § 9 of the Stock Corporation Law as it was amended in 1948, now § 616 of the Business Corporation Law. That section provides:

" § 616. Greater requirement as to quorum and vote of shareholders.

"(a) The certificate of incorporation may contain provisions specifying either or both of the following:

"(1) That the proportion of shares, or the proportion of shares of any class or series thereof, the holders of which shall be present in person or by proxy at any meeting of shareholders in order to constitute a quorum for the transaction of any business or of any specified item of business, including amendments to the certificate of incorporation, shall be greater than the proportion prescribed by this chapter in the absence of such provision.

"(2) That the proportion of votes of the holders of shares, or of the holders of shares of any class or series thereof, that shall be necessary at any meeting of shareholders

for the transaction of any business or of any specified item of business, including amendments to the certificate of incorporation, shall be greater than the proportion prescribed by this chapter in the absence of such provision.

"(b) An amendment of the certificate of incorporation which adds a provision permitted by this section or which changes or strikes out such a provision, shall be authorized at a meeting of shareholders by vote of the holders of two-thirds of all outstanding shares entitled to vote thereon, or of such greater proportion of shares, or class or series of shares, as may be provided specifically in the certificate of incorporation for adding, changing or striking out a provision permitted by this section.

"(c) If the certificate of incorporation of any corporation contains a provision authorized by this section, the existence of such provision shall be noted conspicuously on the face or back of every certificate for shares issued by such corporation."

But even if the *1930* resolutions authorized an amendment of the certificate of incorporation (and we hold they do not) they could not be used as a basis for amending the charter 33 years later in 1963. Such resolutions were void and against public policy at the time they were adopted and continued so until some action by the stockholders adopted or ratified them according to former § 9 of the Stock Corporation Law, now § 616 of the Business Corporation Law, after 1948. This was never done.

Holding as we do that the amendment of the certificate of incorporation was invalid and improperly filed, must the defendants bring an action against the Secretary of State to have it vacated or expunged or can they, as they suggest, validly counterclaim in this lawsuit seeking a declaration of its nullity? Since the Secretary of State acts only in a ministerial capacity in filing such certificate the remedy for a void certificate is the remedy defendants are pursuing. Cf. New York State Society of Professional Engineers v. Department of State, 174 Misc. 173, 20 N.Y.S.2d 62 (Sup.Ct., 1940); 7 White on New York Corporations, par. 12.18, p. 257.

Accordingly, defendants are entitled to a judgment declaring that the certificate of amendment of the certificate of incorporation of Globe filed with the Secretary of State on January 10, 1963, is null and void and a declaration that the directors of Globe are to be elected by a vote of the persons entitled to vote a plurality of Class A common stock of such corporation at the annual meeting of the stockholders pursuant to New York Business Corporation Law, §§ 608 and 614.

Settle order.