CAROL BRODSKY, as Executrix of GEORGE BRODSKY, Deceased, Respondent, v. FRANK BANNON et al., Doing Business Under the Name of OAKDALE HOME VILLAGE, Appellants.

First Department, December 30, 1974.

*Leonard Feldman* for appellants.

*Jacob Lewis Gold* (*Isidore Shapiro* with him on the brief), attorney for respondent.

STEUER, J. The defendants, together with George Brodsky, were partners in the operation of a trailer park in South Brunswick, New Jersey. Brodsky died December 31, 1969. According to the partnership agreement the surviving partners had the right to acquire the deceased partner's interest by paying a sum arrived at by a specific formula. The sum came to $32,847, and defendants offered to pay this sum to plaintiff, the deceased's widow and executrix. Plaintiff countered with this action, which sought liquidation of the partnership assets and the appointment of a receiver. Defendants counterclaimed for specific performance of the option to purchase. Issue was joined in March, 1971.

The instant motion was made by plaintiff in March, 1972. In the interim the Town of South Brunswick passed a resolution materially increasing the requirements for operating a trailer park. To meet these requirements an investment well beyond the resources of the partnership was needed. Efforts to obtain financing were unavailing, as were efforts to reach a compromise with the town. On March 7, 1972, the partnership's license was revoked. Its principal asset, its lease, became practically valueless.

At this point plaintiff made a notable discovery. She found that she had mistaken her remedy. She now agreed that what she was entitled to was the book value of the deceased's interest. She accordingly moved to amend her complaint to ask for the relief demanded in the counterclaim, namely, specific performance of the buy out agreement, and as there was no issue in regard to the amount she asked for summary judgment. The defendants countered with a claim that it was her fault that the permit was revoked on the ground that the suit for dissolution had prevented them from obtaining a loan. That issue was tried and the court found, quite properly we believe, that defendants did not substantiate the claim. Plaintiff's motion for summary judgment had been granted subject to a stay of execution until resolution of the counterclaim. Plaintiff now has a judgment.

The manifest unfairness of this result is sought to be justified by the correctness of each of the legal steps involved. The reasoning is that plaintiff had a perfect right to assert a claim for what she deemed to be the value of the deceased's interest. She furthermore had the right to withdraw that claim if she later found it to be untenable, and to accept the solution that the defendants had proffered. It was not her doing that caused the depletion of the partnership assets, so by every tenet of legal cause and effect she is entitled to the judgment awarded her.

This syllabus loses sight of a fundamental principle of equity — that the Chancellor can shape the relief to be granted to the equities of the situation. When plaintiff was willing to accept the tender it no longer represented the value of the deceased's interest. By legal maneuver she sought to gamble on a larger sum, with the insurance of getting at least what the deceased's interest was at the time of death. It is hornbook learning that an equitable decree speaks as of the time of judgment, as contrasted with a judgment at law which reflects the rights as of the time the cause of action arose. Here, it is quite clear that the surviving partners did not waste the assets of the partnership, and nobody claims to the contrary. They offered the sum agreed upon. It was refused when offered, and belated acceptance attempted when it became obvious that the sum offered greatly exceeded what the deceased's share was then worth. Under these circumstances every instinct of fairness dictates that the value of the deceased's share be calculated as of the date of acceptance and that the plaintiff have judgment in that amount.

The judgment entered September 12, 1972, in New York County (QUINN, J.) should be reversed on the law and judgment vacated; the judgment dismissing defendants' counterclaim, entered December 11, 1973, in New York County (GREENFIELD, J.) should be affirmed and the matter remanded to Trial Term for further proceedings in accord with this opinion, with costs and disbursements.

CAPOZZOLI, J. (dissenting). Plaintiff's testator and the two defendants formed a partnership on November 27, 1964, which operated under the name of Oakdale Mobile Home Village.

On December 31, 1969 plaintiff's testator passed away and on February 13, 1970 plaintiff was appointed executrix of the estate.

On March 10, 1970 defendants, through their attorneys and in accordance with the terms of the partnership agreement, notified plaintiff that they elected to exercise their right under the agreement to acquire the interest of the testator for the sum of $32,847. Accordingly, they offered to pay this sum to the plaintiff.

At that time plaintiff, being represented by attorneys other than those who represent her in this action, instead of accepting the offer of the defendants, brought a lawsuit seeking liquidation of the partnership proper and the appointment of a receiver. Defendants, in their answer, counterclaimed for a dismissal of the complaint and specific performance to compel plaintiff to comply with the exercise of the defendants' option to purchase the interest of the testator, as above stated. Issue was joined on March 23, 1971.

On April 17, 1972 plaintiff moved for summary judgment, expressing her willingness to accept the sum of $32,847, in accordance with the relief demanded in defendants' counterclaim. When plaintiff made this motion defendants, for the first time, by cross motion, moved to amend their answer to withdraw their original counterclaim for specific performance of the buy-sell agreement and to interpose two new counterclaims for damages claimed to have been suffered as a result of plaintiff's earlier refusal to comply with the buy-sell agreement. The new theory upon which defendants relied was that, because of the plaintiff's refusal in the first instance to have accepted the sum above mentioned, the defendants suffered serious damage and the revocation of the permit issued to them by Town of South Brunswick, New Jersey, in which the trailer park of the partnership was being operated.

Special Term granted the plaintiff's motion for summary judgment and directed judgment in her favor. However, execution of the judgment was stayed pending a determination of the validity of the defendants' new counterclaims. The counterclaims were thereafter tried and the court dismissed the counterclaims because it concluded that the defendants did not prove their allegations. We agree with the majority that the decision of the trial court (Mr. Justice GREENFIELD) was quite proper. The trial court made its findings very clear that there was no relation whatever between the failure of the plaintiff to have accepted the original offer and any damage claimed by defendants with respect to the events which thereafter took place.

Mr. Justice GREENFIELD said:

" I do not see, on the basis of the proof which has been adduced by the plaintiff, [defendants] that the bringing of that law suit was the proximate cause of the township actions with respect to the Oakdale Mobile Park. There were no injunctions. There were no stays. The parties were free to continue as they would.

" The existing partnership of Brodsky, Bannon and Neckman had been terminated on the date of his death on December 31, 1969. Thereafter, the business was operated as a new legal entity composed of Bannon and Neckman and they operated without the necessity of consultation or inclusion of the interests of Mr. Brodsky or his estate. They were free to do so and they did do so.

" They operated in all respects as a new and independent legal entity, to wit, a new partnership. They continued to rent spaces; to collect the rents; to pay the fees and all the other costs and expenses that were entailed; to file tax returns and to divide profits and share losses between them and them alone.

" There was no necessity for getting the acquiescence or approval or consent of Mrs. Brodsky with respect to any of their operations.

" The evidence further shows   *   *   *   *that the problem with respect to the non-conformity of the township regulations with respect to the Oakdale Mobile Park was a problem which antedated the death of Mr. Brodsky and continued."* (Emphasis supplied.)

Under our Partnership Law it is provided, in section 51 (subd. 2, par. [d]) as follows: " On the death of a partner his right in specific partnership property vests in the surviving partner or partners ". (Also, see, *Goldstein* v. *Kaye,* 2 A D 2d 889; *Virshup* v. *Industrial Bank of Commerce,* 272 F. 2d 43.)

The partnership is dissolved by the death of one of the partners in the absence of a specific agreement to the contrary. (*Storer* v. *Ripley,* 12 Misc 2d 662.)

It should also be noted that, when the defendants, as surviving partners, succeeded to the exclusive right to the possession and control of the partnership assets, they also succeeded to the sole right to administer the business of the partnership without any interference on the part of the representatives of the deceased partner. (*Silberfeld* v. *Swiss Bank Corp.,* 273 App. Div. 686, affd. 298 N. Y. 776.) Defendants did exactly that. They operated the partnership business exclusively after the testator's death, as was their right, and the plaintiff never participated in the affairs of the partnership after the testator's death. They operated the partnership as their own enterprise and never rendered an accounting to the plaintiff and paid her no moneys or other benefits because she was not part of the partnership and could not claim these rights.

Under the circumstances of this case, the estate of the deceased partner had no proprietary interest in the business or profits of the partnership after the death of the testator and the plaintiff had an adequate remedy at law and was not entitled to an accounting. (*Hermes* v. *Compton,* 260 App. Div. 507.) The partnership terminated on the death of the testator and no decree was necessary to effect that dissolution. (*Sanders* v. *Wyle,* 67 N. Y. S. 2d 623; *Trenbath* v. *Platt,* 20 N. Y. S. 2d 244, affd. 264 App. Div. 708, mot. for lv. to app. den. 264 App. Div. 755.) It follows that the value of the testator's interest in the partnership had to be determined as of the date of his death, December 31, 1969, whether on the basis of fair market value of the partnership interests, as plaintiff initially claimed, or on the basis of the book value, as claimed by defendants. (*M. & C. Creditors Corp.* v. *Pratt,* 172 Misc. 695, affd. 255 App. Div. 838, affd. 281 N. Y. 804.)

The majority opinion asserts that in equity a Chancellor can shape the relief to be granted to the equities of the situation. And it argues, in effect, that, since the plaintiff was unwilling to accept the tender of the moneys offered by the defendants following the death of the testator, she can no longer insist upon the same amount of money which was then due her but, rather, must accept the value of the testator's interest as it existed at the time of the rendition of the judgment because the partnership was worth less at that time. It is true that the case was started by the plaintiff initially as an equity case, but her motion to withdraw her cause of

action was granted and she then applied for the money judgment representing the value of the interest of the testator as it existed at the time of his death.

The majority is, in effect, punishing this plaintiff because of the selection of the wrong remedy chosen when the suit was started. It is noteworthy that her original lawyers were replaced by new lawyers and they were responsible for the proceedings leading to the motion for summary judgment. It is settled law that, where the court has proper jurisdiction of the parties and the subject matter of the litigation and a pleader mistakes his remedy, he will not be put out of court, but will be permitted to serve an amended complaint, even if the amendment transforms an action in equity to one of law. (*Moen* v. *Thompson*, 186 Misc. 647.)

Also, why should the plaintiff receive less money than what was provided for in the partnership contract simply because the defendants chose to continue the partnership business after the testator's death and to charge the plaintiff with whatever loss in assets may have been sustained? Whatever happened to the partnership business after the death of the testator was the sole responsibility of the surviving partners, the defendants herein. The time of valuation was the date of the testator's death. That was the only determining factor in fixing value. Whatever occurred after the partnership business was continued by these defendants and over which plaintiff had no control, was necessarily and justly the defendants' gamble and not of the plaintiff's making. Those subsequent events simply have no relation to the question of the value of testator's interest in the partnership, as of the time of his death.

At no time prior to the making of the motion for summary judgment did defendants ever question the right of the plaintiff to recover the sum of $32,847. They never attempted to withdraw or rescind or in any way change their exercise of the option to purchase the testator's interest for the sum mentioned but, on the contrary, counterclaimed for specific performance to compel the plaintiff to accept that sum.

However, the defendants could have avoided the consequences which have followed since the inception of this suit by safeguarding the moneys due to the plaintiff as of the time of the testator's death. They might have preserved that money in an escrow account or, perhaps, might have made a deposit in court. Failing to do either of these things, certainly they had no right to use that money for the continued busi-

ness activities of the partnership and then charge the plaintiff with losses which may have been incurred therefrom.

Accordingly, we dissent and vote to affirm the judgments appealed from.

MARKEWICH and TILZER, JJ., concur with STEUER, J.; CAPOZZOLI, J., dissents in an opinion, in which McGIVERN, P. J., concurs.

Judgment, Supreme Court, New York County, entered on September 12, 1972, reversed, on the law, and vacated; and judgment of said court, entered on December 11, 1973, affirmed, and the matter remanded to Trial Term for further proceedings in accordance with the opinion of this court filed herein. Appellants shall recover of respondent $60 costs and disbursements of this appeal.