[713 NYS2d 332]

FREDERICK F. BUECHEL et al., Individually and as Trustees of Trusts Entitled Biomedical Engineering Trust, Respondents, v JOHN N. BAIN et al., Appellants, et al., Defendants.

First Department, September 28, 2000

## APPEARANCES OF COUNSEL

*David N. Ellenhorn* of counsel, New York City (*Solomon, Zauderer, Ellenhorn, Frischer & Sharp,* attorneys), for respondents.

*Robert F. Cusumano* of counsel, New York City (*Simpson Thacher & Bartlett,* attorneys), for John N. Bain, appellant.

*Thomas W. Hyland* of counsel, New York City (*Steven Verveniotis* and *Brett A. Scher* on the brief; *Wilson Elser Moskowitz Edelman & Dicker, L. L. P.,* attorneys), for John G. Gilfillan, III, appellant.

## OPINION OF THE COURT

RUBIN, J.

This matter involves the propriety of an agreement to compensate defendants for legal services rendered to plaintiffs Frederick F. Buechel, M.D. and Michael J. Pappas, Ph.D. in connection with the patenting of certain prosthetic devices plaintiffs had developed. At issue is the preclusive effect to be given to a decision rendered in a lawsuit brought by R. Gale Rhodes, Jr., a former law partner of defendants John N. Bain and John G. Gilfillan, III, in which the same Court (Richard Lowe, III, J.) ruled that the fee agreement was improper and limited the amount due Rhodes to the value of the services he had rendered to the two inventors (*Rhodes v Buechel*, Sup Ct, NY County, Apr. 30, 1998, index No. 8055/87). This Court affirmed the judgment, finding that "neither the initial arrangement nor its subsequent incarnations were entered into upon adequate disclosure to defendants [plaintiffs herein] of other possible fee arrangements and potential conflicts of interest, or with the aid of independent counsel retained for the purpose of safeguarding [their] interests. Rescission of the parties' arrangements *ab initio*, with payment to [Rhodes] in quantum

meruit for his services, is an equitable result (*see, Howard v Murray*, 43 NY2d 417, 421; *Matter of Cooperman*, 83 NY2d 465, 473; *Schlanger v Flaton*, 218 AD2d 597, *lv denied* 87 NY2d 812)" (*Rhodes v Buechel*, 258 AD2d 274, 275). No further appeal was taken from this order.

In the present action, in which plaintiffs seek to terminate any interest defendants might have in a certain trust, defendant attorneys raise contentions that were not advanced by their former partner. First, they note that the fee arrangement found to be void in *Rhodes v Buechel* (*supra*) is specifically permitted by a Federal regulation (37 CFR 10.64). Second, they argue that the Federal courts have exclusive jurisdiction over this issue, which they construe as a matter of patent law, and that the *Rhodes* decision is therefore void for lack of subject matter jurisdiction.

The essential facts are not in dispute. Plaintiff Buechel, a resident in orthopedic surgery, and plaintiff Pappas, a mechanical engineer, developed a prosthetic shoulder device (the floating center prosthetic joint) which they sought to protect with a patent. They retained the firm of Bain, Gilfillan & Rhodes, P. C. "to undertake the preparation and prosecution of a patent application covering the invention on a contingency basis." The subject fee agreement entered into by the two inventors on September 12, 1974 provides that the law firm will contribute capital to finance research and marketing of the device and that "any or all monies, profits or other income or benefits received, whether by way of royalties or otherwise, shall be shared proportionately between the parties hereto on a one-third (1/3) basis."

The gravamen of the dispute is the extent of the disclosure made by the members of the law firm concerning the potential conflict of interest arising from the attorneys' stake in the devices they had undertaken to protect against infringement. Affidavits submitted, respectively, by defendants Bain and Gilfillan state that, on the suggestion of their former partner, R. Gale Rhodes, the parties subsequently agreed to form a corporation, both for tax considerations and to insulate the entrepreneurs from personal liability. With respect to the propriety of the fee agreement, it is averred that, preliminary to the formation of the corporation, defendant Bain specifically advised plaintiffs of the potential conflict of interest inherent in the arrangement. It is further alleged that the plaintiffs were advised to obtain independent counsel, but elected not to do so. Plaintiffs Buechel and Pappas, however, take the posi-

tion that at no time were they were advised either of the potential conflict of interest or of their right to discharge the firm as their counsel at any time.

Biomedical Engineering Corporation was incorporated in New Jersey on July 16, 1975. The corporation took title to the prosthetic shoulder device and to other prosthetic devices developed by plaintiffs in the interim. In accordance with the fee agreement, Buechel and Pappas each held one third of the shares of the corporation, while the remaining one-third interest was divided equally among the three attorneys. A dispute subsequently arose among the law partners, culminating in the departure of Rhodes in December 1981. Bain and Gilfillan continued to perform legal work for plaintiffs, and their responsibilities were expanded to include litigation and patent maintenance. Gilfillan alleges, however, that following his departure from the firm, Rhodes covertly formed a corporation in Florida with plaintiffs, also known as Biomedical Engineering Corporation, to hold any future patents Buechel and Pappas might obtain.

In late 1982 or early 1983, an attorney named John Power was retained by plaintiffs to assess the feasibility of dissolving the original Biomedical Engineering Corporation. The decision was made to dissolve the New Jersey corporation and transfer its assets to a newly formed entity, the Biomedical Engineering Trust (Trust I), with Pappas and Buechel as trustees. The shareholders of the dissolved corporation, including the three attorneys, received equivalent equity interests in the trust, which thereupon received royalty payments from the sale of some of the prosthetic devices. At the trial in *Rhodes v Buechel* (*supra*), John Power testified to conversations with Buechel and Pappas, in which he "told them what they already knew * * * that they had to rely upon the advice of the attorney partner of theirs who possibly might have a financial disincentive to give them advice that perhaps they should be receiving."

In 1984, a second trust was formed, again with Pappas and Buechel as trustees, designated the Biomedical Engineering Trust II (Trust II), which held the marketing rights to a self-centering hip device. While neither defendant held any interest in Trust II, their former partner, R. Gale Rhodes, undertook to provide legal patent protection services to this entity. In 1987, a dispute arose over trust distributions, and Rhodes commenced his action against Buechel and Pappas to recover millions of dollars which the trustees were alleged to have

improperly paid to themselves (*Rhodes v Buechel, supra*). The ensuing judgment duly recites that his former partners, Bain and Gilfillan, were joined as defendants in their capacity as trust beneficiaries and that they were represented by counsel in the *Rhodes* action.

Four years after Rhodes commenced the action, Buechel and Pappas asserted counterclaims for breach of fiduciary duty and malpractice, asserting that Rhodes had acted in violation of his ethical responsibilities as a lawyer. They did not, at that time, assert any claims against Bain and Gilfillan, who apparently continued to provide legal services to Trust I. It was not until 1995 that Buechel and Pappas sought to expand their counterclaims to seek relief against Bain and Gilfillan. Supreme Court denied their motion to amend the counterclaims, noting that the attorneys had been counterclaim defendants for seven years and that Buechel and Pappas had brought their motion to amend some five months after the filing of a note of issue, following protracted discovery and without the proffer of any excuse for the delay.

Pappas and Buechel commenced the instant action in March 1995, naming Bain and Gilfillan as defendants. The complaint contains five causes of action, alleging breach of fiduciary and ethical obligations and legal malpractice. This action, which seeks termination of trust payments to Bain and Gilfillan and turnover of trust files maintained by the attorneys, was stayed by Supreme Court pending resolution of the *Rhodes* matter.

The *Rhodes* litigation produced over 5,000 pages of trial transcript and resulted in a 42-page decision, invalidating the fee arrangement between plaintiffs and their original counsel, the firm of Bain, Gilfillan & Rhodes. As Supreme Court's opinion states at the inception, the complaint was brought against Buechel and Pappas, both individually and as trustees of the two Biomedical Engineering Trusts. It charged them with making improper payments to themselves from the trusts and sought to remove them as trustees and compel payment to Rhodes of his share of trust income alleged to have been withheld since 1987. However, Supreme Court found that the fee agreement from which Rhodes derived his interest in the trusts was unethical. The judgment recites the court's finding that the complaint's allegation of a breach of fiduciary duty by the trustees was without merit and, in any event, rendered moot by the rescission, *ab initio*, of any interest Rhodes might have acquired in either Trust I or Trust II under the fee agreement. The court found that plaintiffs were never advised to seek in-

dependent counsel before entering into a business relationship with their attorneys and that Rhodes had "exploited his clients through affirmatively pursuing a business relationship with them absent full disclosure" (Code of Professional Responsibility DR 5-104 [a] [22 NYCRR 1200.23 [a]).

On this appeal, the parties dispute whether or not Bain and Gilfillan, who portray themselves as merely nominal parties in the unsuccessful suit by their former partner, were afforded a full and fair opportunity to litigate the question of the propriety of the fee arrangement in the *Rhodes* action. Specifically, the attorneys regard as dispositive the denial of the motion by Buechel and Pappas (plaintiffs herein) to amend their counterclaims of breach of fiduciary duty and malpractice in *Rhodes* to include Bain and Gilfillan. Defendant attorneys note that the fee arrangement in question is *"expressly permitted under federal law* governing the conduct of federal patent practitioners" (citing 37 CFR 10.64 [emphasis in original]), which "permits patent attorneys to take an interest in a patent in lieu of a fee." Furthermore, they argue that the determination in *Rhodes* that "the parties' fee agreement was void *ab initio* because it violated New York ethics rules" is without effect on the ground that "federal courts have exclusive jurisdiction over all claims arising under federal patent law."

Plaintiffs Pappas and Buechel claim that the jurisdiction of the Federal courts is not exclusive; that Bain and Gilfillan's respective interests in Trust I did not survive their discharge as attorneys in January 1995; that Bain and Gilfillan failed to disclose fully the options available to the inventors in retaining them as attorneys; that Bain's and Gilfillan's violation of the Canons of Ethics warranted return of the legal fees paid to them less the value of services actually rendered; and that Bain and Gilfillan had a full and fair opportunity to litigate all issues in the course of the *Rhodes* litigation.

As the parties frame it, the issue presented on this appeal is whether defendant attorneys have had their day in court so as to invoke the principle of collateral estoppel on the question of the validity of the fee agreement and, consequently, the validity of their respective interests in Trust I. This formulation suggests that the judgment rendered in *Rhodes* determines the extent of the inventors' obligation to defendants' former partner under the fee agreement. It is the attorneys' position that, because their involvement in the *Rhodes* action was merely that of nominal defendants, they did not contest the validity of the fee agreement or otherwise actively participate in the liti-

gation. Therefore, they argue, they should now be granted the opportunity to be heard with respect to the contract dispute and to advance their theory that Federal law is controlling.

The parties misapprehend the nature of the adjudication rendered in the *Rhodes* matter, the role of defendants in that litigation and, therefore, the application of the doctrines of res judicata and collateral estoppel. The Court of Appeals explained the distinction in *Ryan v New York Tel. Co.* (62 NY2d 494, 500):

"This rule of *res judicata* is founded upon the belief that ' "it is for the interest of the community that a limit should be prescribed to litigation, and that the same cause of action ought not to be brought twice to a final determination. Justice requires that every cause be once fairly and impartially tried; but the public tranquillity demands that, having been once so tried, all litigation of that question, and between those parties, should be closed forever." ' (*Fish v Vanderlip*, 218 NY 29, 36-37, quoting Greenleaf's Evidence, §§ 522, 523; see, also, *Schuylkill Fuel Corp. v Nieberg Realty Corp.*, 250 NY 304; *Hendrick v Biggar*, 209 NY 440.)

"The doctrine of collateral estoppel, a narrower species of *res judicata*, precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same. (*Ripley v Storer*, 309 NY 506, 517; see, also, Restatement, Judgments 2d, § 27; 46 Am Jur 2d, Judgments, § 415; 9 Carmody-Wait 2d, NY Prac, Judgments, § 63:205.)"

What the parties overlook is that the decision in *Rhodes* is not simply a determination of the extent of the contractual obligation undertaken by Buechel and Pappas under the fee agreement. Rather it is an adjudication of their obligation *as trustees* to make payment under the terms of Trust I, of which defendants herein and Rhodes are all beneficiaries, and Trust II, which concerns only Rhodes (*see, Levine v Gross*, 177 AD2d 290, 291-292). The issue presented for decision in *Rhodes* was whether or not Buechel and Pappas, as trustees, were required to make payments to an attorney whose rights *as a trust beneficiary* derived from the fee agreement between Buechel and Pappas, individually, and the law firm of Bain, Gilfillan & Rhodes. This action similarly addresses the status of attorney-beneficiaries whose rights to receive proceeds from the trust are predicated on the identical fee agreement. Therefore, Bain and Gilfillan, who were parties to the *Rhodes* case, are barred

by the doctrine of res judicata from relitigating the question of their entitlement to trust proceeds. That defendant attorneys did not participate actively in the *Rhodes* action is immaterial, as is their failure to raise the preemption issue or their own measures to comply with the Canons of Ethics. As this Court observed in *Boorman v Deutsch* (152 AD2d 48, 53, *lv dismissed* 76 NY2d 889), "res judicata embraces not only those matters which are actually litigated before a court but also those relevant issues which could have been litigated (*Schuylkill Fuel Corp. v Nieberg Realty Corp.*, 250 NY 304), including jurisdiction (*Angel v Bullington*, 330 US 183; *Johnson v Muelberger*, 340 US 581; *Reich v Cochran*, 151 NY 122)."

The contention that Bain and Gilfillan were merely nominal parties to the *Rhodes* matter is without merit. The parties' freedom to chart their own procedural course before the courts is not without limits (*Stevenson v News Syndicate Co.*, 302 NY 81, 87; *Matter of Malloy*, 278 NY 429). CPLR 1001 (a) provides, "Persons who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action shall be made plaintiffs or defendants." It further provides: "When a person who should join as a plaintiff refuses to do so, he may be made a defendant."

The beneficiary of a trust has no legal estate in trust property but has only the equitable power of enforcement (EPTL 7-2.1 [a]; *Duvall v English Evangelical Lutheran Church*, 53 NY 500 [1873]). Where the extent of the duty of the trustees to disburse trust income is raised by one of its beneficiaries, the resulting judgment will necessarily affect the concomitant right of other beneficiaries, similarly situated, to receive such payments. They are therefore not merely incidental but essential parties to the action, subject to joinder under CPLR 1001 (a). The purpose of the compulsory joinder rule is both to prevent duplicative litigation and to protect the rights of persons who may be adversely affected by the outcome (*see, Manufacturers Hanover Trust Co. v Crossland Sav.*, 177 AD2d 78, 79, 82; *Parker v 151 E. 83rd St. Tenants Corp.*, 171 AD2d 599; 3 Weinstein-Korn-Miller, NY Civ Prac ¶ 1001.01). Having been joined as parties to the *Rhodes* action for the purpose of permitting them to protect their interests as beneficiaries of Trust I, Bain and Gilfillan cannot complain that they failed to avail themselves of the opportunity presented. They certainly may not require the courts to, entertain an issue that could have been decided in the *Rhodes* action had it been timely raised. Apart from

avoiding the imposition on limited judicial resources (*see, Smith v Daca Taxi*, 222 AD2d 209, 211 [vacatur]; *Raboy v McCrory Corp.*, 210 AD2d 145, 147 [consolidation]), the bar against duplicative litigation obviates the potential for "conflicting rulings on identical issues" (*Bank of Tokyo-Mitsubishi v Kvaerner a.s.*, 243 AD2d 1, 9). The judgment rendered in *Rhodes* decides not only the propriety of the conduct of the trustees, but also the validity of the agreement under which the attorney-beneficiaries, as partners in a law firm, derived their interest in the trusts. No appeal was taken from this Court's affirmance of the judgment in that case, and the outcome is conclusive of the issues sought to be raised by defendants in this matter.

Application of the doctrine of collateral estoppel, as urged by defendants, does not alter the disposition. In applying the doctrine, "the fundamental inquiry is whether relitigation should be permitted in a particular case in light of what are often competing policy considerations, including fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results" (*Staatsburg Water Co. v Staatsburg Fire Dist.*, 72 NY2d 147, 153). To be estopped, the party to the present litigation must either have been a party to the prior proceeding or in privity with a party to that proceeding (*D'Arata v New York Cent. Mut. Fire Ins. Co.*, 76 NY2d 659, 664). Under the concept of privity, collateral estoppel has been said to extend to "those whose interests are represented by a party to the action" (*Watts v Swiss Bank Corp.*, 27 NY2d 270, 277, citing Restatement of Judgments §§ 81-90).

As this Court recently noted in *All Terrain Props. v Hoy* (265 AD2d 87, 93): "Privity has been described as 'an amorphous term not susceptible to ease of application' (*Gramatan Home Investors Corp. v Lopez*, 46 NY2d 481, 486). The doctrine extends to 'persons who were not parties to the previous action but who were connected with it to such an extent that they are treated as if they were parties' (*supra*, at 486). 'What is controlling is the identity of the issue which has necessarily been decided in the prior action or proceeding' (*Ryan v New York Tel. Co.*, 62 NY2d 494, 500)." Privity clearly extends to the partners comprising the law firm that is party to the subject contract, and Supreme Court's assessment of the validity of the fee agreement before it in *Rhodes* was essential to its determination that the trustees have no obligation to make any payments to a beneficiary who derives his interest from that agreement. Irrespective of their capacity in the *Rhodes* litiga-

tion, whether as essential or merely nominal parties, Bain and Gilfillan are clearly in privity with Rhodes. As partners in the law firm that entered into the fee agreement with plaintiffs, their right to receive trust income stands or falls with the contract. The three attorneys are united in interest with respect to the enforcement of the agreement and are therefore estopped from relitigating its validity, an identical issue necessarily decided in the prior action (*id.*).

Defendant Bain additionally asserts that "there was simply no basis to apply New York's code of ethics to an agreement entered into in New Jersey between federal patent practitioners resident in New Jersey and their New Jersey clients involving conduct governed—and expressly sanctioned—by federal patent law." The question of what State's law should be applied to the obligation of the trustees to make payments to the attorney beneficiaries, likewise, could have been raised in the context of the *Rhodes* litigation, but was not. A party to a lawsuit cannot sit by idly while a contract, to which he is also a party, is judicially construed without being precluded by the result. Implicit in a court's entry of judgment is a determination of its power to render it and, similarly, the preemption of State law was an issue necessarily resolved in *Rhodes* with preclusive effect against the parties and their privies.

Were this Court to reach the arguments sought to be advanced by defendants herein, it would find them to be without merit. That a Federal regulation (37 CFR 10.64) permits an attorney to take an interest in a patent in lieu of a fee for services rendered is not dispositive of either the validity of defendants' conduct nor the jurisdiction of the courts of this State. As 37 CFR 10.1 provides, "Nothing in this part shall be construed to preempt the authority of each State to regulate the practice of law, except to the extent necessary for the Patent and Trademark Office to accomplish its federal objectives." While the patent regulations are pertinent with respect to the interest bestowed on the attorneys by the inventor-clients, the regulations do not obviate the full disclosure required by the Canons of Ethics governing the practice of law in this State. Consequently, the propriety of the fee arrangement at issue in this case is not a question that arises exclusively under patent law, and Supreme Court had subject matter jurisdiction to rescind the fee agreement upon the finding that it was made without the necessary disclosure of the potential conflict of interest and without the advice of independent counsel.

Accordingly, the order of Supreme Court, New York County (Richard Lowe, III, J.), entered January 19, 2000, which denied

defendants' motion to dismiss the amended complaint, should be affirmed, without costs. Order, same court and Justice, entered February 4, 2000, which granted plaintiffs' motion for partial summary judgment and denied defendants' cross motion for summary judgment, should be affirmed, without costs.

ELLERIN, J. P., SAXE and BUCKLEY, JJ., concur.

Orders, Supreme Court, New York County, entered January 19, 2000 and February 4, 2000, affirmed, without costs.