OPINION OF THE COURT
Arthur M. Schack, J.
This case presents the court with the issue of whether counsel for all parties in an action, as a matter of public policy, can agree by stipulation to extend the time “to make dispositive motions” to a time that violates CPLR 3212 (a) and a local Supreme Court rule for the time to file summary judgment motions. The court must answer this question with a resounding no.
In this personal injury action for negligence and Labor Law violations, plaintiffs allege that, on August 31, 2001, plaintiff Wladyslaw Balcerzak worked on the rooftop of 866 U.N. Plaza, at First Avenue and East 48th Street, New York, New York, and moved a wheelbarrow with asphalt for a roofing project. He then sustained multiple injuries when struck by a hoist and then fell from a higher roof onto a lower roof at 860 U.N. Plaza (plaintiffs’ verified bill of particulars and plaintiff Wladyslaw Balcerzak’s examination before trial).
The attorneys for all parties signed what is labeled a “So Ordered Stipulation” on September 24, 2004 (exhibit A of plaintiffs’ affirmation in opposition to defendant 866 U.N. Plaza Associates, LLC’s motion for summary judgment). They agreed that, among other things, plaintiffs will file a note of issue “forthwith,” and “STIPULATED AND AGREED” that the time for all parties to make dispositive motions is extended to December 31, 2004, without prejudice, to seek leave for a further extension of time to “make said motions.” The stipulation had blank lines for Justice Melvin Barasch (then assigned to the case as the IAS Justice) to “so order” and date the stipulation. Justice Barasch never signed and “so ordered” the stipulation. Further, the stipulation contains an annoying, continuous draftsmanship error in its caption, the body of the agreement, and the signature page, by referring to defendant 866 U.N. Plaza Associates as “886 U.N. Plaza Associates.” (Emphasis added.) This incorrect caption name went uncorrected even though it was observed by myriad eyes in the four law firms that agreed to this stipulation.
Pursuant to the stipulation, plaintiffs filed the note of issue on October 1, 2004 (exhibit A of plaintiffs’ affirmation in opposition to defendant 866 U.N. Plaza Associates, LLC’s motion *526 for summary judgment). This case, with the remainder of Justice Barasch’s case inventory, was assigned to me in November 2004, upon the retirement of Justice Barasch. On January 4, 2005, 95 days after the filing of the note of issue, both plaintiffs and defendant 866 U.N. Plaza Associates, LLC filed motions for summary judgment, pursuant to CPLR 3212 (a). Plaintiffs’ notice of motion was dated December 31, 2004 and defendant 866 U.N. Plaza’s notice of motion was dated December 30, 2004. Plaintiffs sought summary judgment for their claims of negligence and Labor Law §§ 200, 240 and 241 violations against defendants DNA Contracting, LLC and 860 West Tower, Inc. Defendant 866 U.N. Plaza sought summary judgment for dismissal of plaintiffs’ complaint and all cross claims against it. The making of the summary judgment motions complied with the parties’ September 24, 2004 stipulation. To add to the mix, defendant 860 West Tower filed a cross motion, dated February 9, 2005, on February 10, 2005, seeking summary judgment and dismissal of plaintiffs’ complaint and all cross claims against it.
The court must deny the two motions and the cross motions as untimely. The September 24, 2004 stipulation extending time limits for summary judgment motions to more than 60 days after the filing of the note of issue contravenes public policy. Thus, the parties can proceed to trial and, if they cannot agree to a settlement of the case, let a jury decide the issues.
Discussion
Professor David Siegel (NY Prac § 204, at 337 [4th ed]) states that “[t]he parties can stipulate to almost anything in an action. The litigation is theirs and they can pretty much dispose of their rights any way they want to.” However, there are limits to what parties can agree to in a stipulation. In J & A Vending v J.A.M. Vending (303 AD2d 370 [2d Dept 2003]), the Court had to analyze a stipulation of the parties with respect to the sale of a vending machine business. In reviewing the stipulation, the Court (at 371-372) instructed that
“the parties have charted their own procedural course, which they are free to do as long as it does not conflict with public policy (see Mitchell v New York Hosp., 61 NY2d 208, 214 [1984]; T.W. Oil v Consolidated Edison Co. of N.Y., 57 NY2d 574, 579-580 [1982]; Stevenson v News Syndicate Co., 302 NY 81, 87 [1950]; Kass v Kass, 235 AD2d 150, 162 *527 [1997], affd 91 NY2d 554, 558 n 5 [1998])” (emphasis added; see Buechel v Bain, 275 AD2d 65, 72 [2d Dept 2000]; Matter of New York Cent. Mut. Fire Ins. Co. v Dukes, 14 AD3d 704 [2d Dept 2005].)
In determining if the September 24, 2004 stipulation violates public policy, the court is faced with defining “public policy,” a nebulous term at best. In People v Hawkins (157 NY 1, 12 [1898]), the Court of Appeals observed that the “term ‘public policy’ is frequently used in a very vague, loose or inaccurate sense.” To attempt to define the term, the court will be guided by the United States Supreme Court in Muschany v United States (324 US 49, 66 [1945]) which instructed that while “the term ‘public policy’ is vague” it can be “ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.” Citing Muschany, the Court of Appeals in Kraut v Morgan & Brother Manhattan Stor. Co. (38 NY2d 445, 452 [1976]) held that:
“In a concise definition, thrice reiterated by this court (Glaser v Glaser, 276 NY 296, 302; Mertz v Mertz, 271 NY 466, 472; Straus & Co. v Canadian Pac. Ry. Co., 254 NY 407, 413), we have said that ‘when we speak of the public policy of the state, we mean the law of the state, whether found in the Constitution, the statutes or judicial records’ ” (People v Hawkins, 157 NY 1, 12 [1898]).
In Hollis v Drew Theol. Seminary (95 NY 166, 172 [1884]), the Court observed that
“[i]n a juridical sense, public policy does not mean simply sound policy, or good policy; but as defined by Daniel Webster in the Girard Will Case (2 How. [U.S.] 127) [43 US 127 (1844)] it means the policy of a State established for the public weal ‘either by law, by courts or general consent.’ ”
The court in Matter of Andrus (156 Misc 268, 278 [Sur Ct, Westchester County 1935]) instructed that “[p]ublic policies in general are those considerations of public interest and morality which the State enforces by legislation or judicial action.” Public policy, the laws of the state and its interpretation by the courts, is always in some degree of fluidity, with change created by legislation and court decision.
An extreme example of how public policy can change and vary over time is illustrated by the legislative and then the judicial approval of post-Reconstruction racial segregation in the South, *528 with the “separate but equal” doctrine, in Plessy v Ferguson (163 US 537 [1896]), and then the United States Supreme Court’s unanimous 180 degree reversal in Brown v Board of Education (347 US 483 [1954]), followed by subsequent court decisions and congressional legislation. The Plessy court noted (at 552) that “[i]f one race be inferior to the other socially, the constitution of the United States cannot put them upon the same plane,” while the Brown court, 58 years later (at 495), found “that in the field of public education the doctrine of ‘separate but equal’ has no place. Separate educational facilities are inherently unequal.”
In the instant case, the New York Legislature has determined that the public policy for the filing of summary judgment motions, as codified in CPLR 3212 (a), is that:
“Any party may move for summary judgment in any action, after issue has been joined; provided however, that the court may set a date after which no such motion may be made, such date being no earlier than thirty days after the filing of the note of issue. If no such date is set by the court, such motion shall be made no later than one hundred twenty days after the filing of the note of issue, except with leave of court on good cause shown.” (Emphasis added.)
The Legislature amended CPLR 3212 (a) in 1996, effective January 1, 1997, to add the 120-day post-note of issue deadline. Professor Siegel, in his Practice Commentaries (McKinney’s Cons Laws of NY, Book 7B, CPLR C3212:12, at 21-22), explains that:
“Complaints about unreasonably delayed motions for summary judgment were heard for a long time before 1996. Judges especially resented them when they were made on the eve of trial, or, indeed, after preparations for the trial were already under way. There was always the question of why, if the motion had merit and there was a potential for putting the case to rest with no further effort, the motion had been so long delayed. The legislature addressed the matter with an amendment of subdivision (a) of CPLR 3212 that took effect January 1, 1997.”
The 120-day post-note of issue filing deadline for summary judgment motions applies only if “no such date is set by the court.” (CPLR 3212 [a].) Kings County Supreme Court, Civil Term, shortened the CPLR 3212 (a) filing clock in rule 13 of its *529 Uniform Civil Term Rules, providing that “[n]o motion for summary judgment may be made more than 60 days after filing a Note of Issue . . . except with leave of the Court on good cause shown. See, CPLR 3212 (a).”
The parties, in the instant case, stipulated to a summary judgment deadline in contravention of public policy with their agreement to violate CPLR 3212 (a) and Kings County Supreme Court Uniform Civil Term rule 13 without applying for “leave of the Court on good cause shown.” No application was made to either Justice Barasch or myself to extend the deadline and approve the September 24, 2004 stipulation containing the extended filing deadline. Assuming, for the sake of argument, that the two motions and the cross motion are meritorious, public policy still prevents me from finding that meritorious arguments are good cause to extend the CPLR 3212 (a) and Kings County Supreme Court Uniform Civil Term rule 13 fifing deadline. In Brill v City of New York (2 NY3d 648, 652 [2004]), the Court in interpreting CPLR 3212 (a) found that
“ ‘good cause’ in CPLR 3212 (a) requires a showing of good cause for the delay in making the motion—a satisfactory explanation for the untimeliness— rather than simply permitting meritorious, nonprejudicial filings, however tardy. That reading is supported by the language of the statute—only the movant can show good cause—as well as by the purpose of the amendment, to end the practice of eleventh-hour summary judgment motions. No excuse at all, or a perfunctory excuse, cannot be ‘good cause.’ ”
Several months after Brill, in Miceli v State Farm Mut. Auto. Ins. Co. (3 NY3d 725 [2004]), the Court was presented with an appeal from the granting of a summary judgment motion, in Erie County Supreme Court, made more than 120 days after the filing of the note of issue. The Appellate Division, Fourth Department, affirmed the decision (306 AD2d 903 [2003]). In the Court of Appeals, the successful plaintiff offered no excuse for her failure to comply with CPLR 3212 (a) and only argued that she had a meritorious claim. The Court (at 727) stated that “[t]o countenance plaintiffs position here would require us to overturn our own recent precedent. This we refuse to do, and we therefore reverse the order of the Appellate Division awarding summary judgment to plaintiff, without considering the merit of the motion.” In emphasizing its Brill holding, the Court stated (at 726-727) that:
*530 “As we made clear in Brill, and underscore here, statutory time frames—like court-ordered time frames (see Kihl v Pfeffer, 94 NY2d 118)—are not options, they are requirements, to be taken seriously by the parties. Too many pages of the Reports, and hours of the courts, are taken up with deadlines that are simply ignored.”
The Appellate Division, First Department, in Perini Corp. v City of New York (16 AD3d 37, 37 [2005]), stated that in Brill and Miceli “the Court of Appeals spoke clearly and decisively on what constitutes ‘good cause’ for obtaining an extension of time to comply with the statutory requirements for moving for summary judgment after a party files a note of issue.” The Court instructs (at 37), “in the wake of Miceli and Brill, parties may no longer rely on the merits of their cases to extricate themselves from failing to show good cause for a delay in moving for summary judgment pursuant to CPLR 3212 (a).”
The Appellate Division, Fourth Department, followed Brill and Miceli recently in McNeill v Menter (19 AD3d 1161 [2005]) and Polhamus v Foulke (20 AD3d 888 [2005]).
In First Union Auto Fin., Inc. v Donat (16 AD3d 372 [2005]), the Appellate Division, Second Department, synthesized Brill, Miceli and Kings County Supreme Court Uniform Civil Term rule 13. The Court strictly construed Kings County Supreme Court Uniform Civil Term rule 13, holding (at 373) that “the merits of the motion [for summary judgment more than 60 days postnote of issue] should not have been considered unless good cause was shown for the delay.” Further (at 373), citing both Brill and Miceli, the Court held, “Since no good cause for the delay was shown, the Supreme Court erred in considering the motion and cross motion on the merits . . . .”
Recent Second Department decisions continue to hold movants to CPLR 3212 (a) time limits, or shorter periods if set by the courts, such as in Kings County Supreme Court Uniform Civil Term rule 13. In Dettman v Page (18 AD3d 422 [2005]), citing Brill, the Court held that there must be a showing of a satisfactory explanation for delay in filing a CPLR 3212 (a) motion. “In the absence of such a showing, a late summary judgment motion may not be considered, even if it appears to have merit and the delay has not prejudiced the adversary” (Dettman at 422; see Milano v George, 17 AD3d 644 [2005]; Bejarano v City of New York, 18 AD3d 681 [2005]; Rivera v Toruno, 19 AD3d 473 [2005]).
*531 It is clear that pursuant to CPLR 3212 (a) the public policy of New York State with respect to the filing of summary judgment motions is that these motions cannot be filed more than 120 days after the filing of the note of issue, unless there is a local rule setting forth an earlier deadline. Kings County Supreme Court Uniform Civil Term rule 13 shortens this court’s summary judgment motion deadline to 60 days after the filing of the note of issue. In the instant action, the parties stipulated to allow an extended time period for the making of summary judgment motions, without any application to the court for good cause. The late filings of the two summary judgment motions and the cross motion for summary judgment contravene public policy as set forth in CPLR 3212 (a) and Kings County Supreme Court Uniform Civil Term rule 13. The courts eloquently explain New York’s public policy with respect to CPLR 3212 (a) and local court rules for summary judgment deadlines in Brill, Miceli, Donat, and subsequent decisions.
Conclusion
The motion of plaintiffs for summary judgment, pursuant to CPLR 3212 (a), against defendants DNA Contracting and 860 West Tower, for their claims of negligence and Labor Law §§ 200, 240 and 241 violations is denied.
The motion of defendant 866 U.N. Plaza Associates for summary judgment, pursuant to CPLR 3212 (a), and dismissal of plaintiffs’ complaint and all cross claims is denied.
The cross motion of defendant 860 West Tower for summary judgment, pursuant to CPLR 3212 (a), and dismissal of plaintiffs’ complaint and all cross claims is denied.